**BOB MARSHALL ALLIANCE,**
**et al., Plaintiffs,**

**v.**

**Manuel LUJAN, Jr., in his official**
**capacity as Secretary of the**
**Interior, et al., Defendants.**

**No. CV–82–015–GF.**

United States District Court,
D. Montana,
Great Falls Division.

July 10, 1992.

Stephan C. Volker, Sierra Club Legal Defense Fund, Inc., San Francisco, Cal., James A. Patten, Patten & Renz, Billings, Mont., for plaintiffs.

Carl E. Rostad, Asst. U.S. Atty., Ronald Lodders, Crowley, Haughey, Hanson, Toole & Dietrich, Billings, Mont., for defendants.

Michele A. Giusiana, Land & Nat'l Resources Div., General Litigation Section, Washington, D.C.

Robert Schaeffer & Perry Wallace, U.S. Dept. of Justice, Land & Nat'l Resources Div., Washington, D.C.

## MEMORANDUM AND ORDER

HATFIELD, Chief Judge.

### PROCEDURAL BACKGROUND

The plaintiffs, Bob Marshall Alliance and the Wilderness Society, instituted the present action challenging the propriety of the federal government's issuance of several oil and gas leases in an area of the Lewis and Clark National Forest known as Deep Creek. Specifically, the plaintiffs allege the issuance of the leases violated the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. §§ 4321 *et seq.* (1982), and the Endangered Species Act of 1973 ("ESA"), 16 U.S.C. §§ 1531 *et seq.* (1982). This court awarded summary judgment to the plaintiffs holding (i) that the agencies violated NEPA and pertinent forest service regulations by failing to prepare any Environmental Impact Statement ("EIS") for the Deep Creek leases [1]; (ii) that the agencies violated NEPA by failing to give meaningful consideration to the "no-action" alternative; and (iii) that the agencies violated the prescriptions of ESA by not properly assessing the effects of leasing on threatened and endangered species in the Deep Creek area. The court further set aside

---

1. A total of nineteen leases were issued within the Deep Creek area. Some of the leases contained "no surface occupancy" ("NSO") stipulations, which prohibit the lessee from engaging in any surface-disturbing activity. In awarding summary judgment to the plaintiffs, this court also held that the NSO stipulations were insufficient to comply with the mandate of the NEPA.

the actions of the agencies in issuing the leases and enjoined the agencies from issuing any leases in the Deep Creek area pending compliance with NEPA, the ESA and agency regulations. *Bob Marshall Alliance v. Watt*, 685 F.Supp. 1514 (D.Mont. 1986).

Upon appeal, the judgment of this court was affirmed in part, reversed in part, and remanded. *Bob Marshall Alliance v. Hodel*, 852 F.2d 1223 (9th Cir.1988), *cert denied*, 489 U.S. 1066, 109 S.Ct. 1340, 103 L.Ed.2d 810 (1989). The Ninth Circuit affirmed that aspect of the judgment which found the defendant agencies violated NEPA by issuing non-NSO leases on Deep Creek without preparation of an EIS, and by issuing any leases at all on Deep Creek without adequate consideration of the no action alternative. 852 F.2d at 1230. The Ninth Circuit further affirmed that aspect of the judgment which found the defendants violated the ESA by issuing the leases without preparation of a comprehensive biological opinion which assesses the effects of leasing and post-leasing activities on threatened and endangered species in the Deep Creek area. 852 F.2d at 1230. However, the Ninth Circuit remanded the case for two purposes: (1) a determination of which of the 19 leases are NSO leases, *i.e.,* leases in which the language of the stipulation, construed with the rest of the lease, absolutely prohibits surface disturbance in the absence of specific government approval, 852 F.2d at 1227–28; and (2) a clarification of this court's order "setting aside" the federal agencies' actions allowing issuance of the leases. 852 F.2d at 1230.

Presently before the court is defendants' motion for summary judgment. By way of that motion, the parties have presented their positions upon the remanded issues.

Also before the court are two motions, presented subsequent to the circuit court's order of remand, by defendant Paul Kohlman, an individual lessee. Kohlman moves the court for leave to file an amended answer asserting a crossclaim for monetary damages against the Secretary of the Interior and the Bureau of Land Management. Kohlman seeks to recover the monies he paid in rentals on the subject leases after they were issued to him by the federal defendants. Kohlman agrees, in essence, that the leases should be set aside, and the federal defendants enjoined from issuing leases in the Deep Creek area until the issuance of similar leases is done in conformity with applicable federal law. Kohlman also asserts that the Bureau of Land Management must be directed to refund the monies Kohlman paid as rental upon his leases.

## DISCUSSION

### *Federal Defendants' Motion for Summary Judgment*

#### A. NSO Leases

■ The court of appeals defined an effective NSO lease as one with a stipulation which "absolutely prohibits surface disturbance in the absence of specific government approval". *Bob Marshall Alliance v. Hodel*, 852 F.2d at 1227–1228. Throughout this litigation, the federal defendants contended that four of the nineteen leases at issue should properly be considered as NSO leases under the foregoing definition. The plaintiffs, however, have consistently asserted that none of the Deep Creek leases, including those which contained an "NSO stipulation", should be considered as absolutely prohibiting surface disturbance in the absence of specific government approval. Subsequent developments with respect to the four disputed leases, however, have rendered the NSO issue moot as a practical matter.

The federal defendants have advised the court that the holders of the four referenced leases, which the federal defendants contended qualified as NSO leases, have relinquished all rights they may have acquired in those leases. As a result, the federal defendants maintain the leases are no longer in effect and the issue of whether the four leases appropriately qualify as NSO leases, as defined by the Ninth Circuit Court of Appeals, is rendered moot. The court agrees.[2]

---

2. The court also notes that seven of the remaining fifteen leases have also been relinquished.

## B. Appropriate Remedy

The opinion entered by this court in conjunction with the entry of judgment in favor of the plaintiffs stated that the actions of the federal defendants allowing the issuance of oil and gas leases in the Deep Creek area was "set aside", and the defendant agencies enjoined from making further recommendations to lease and issuing leases pending compliance with the NEPA, agency regulations, and the ESA. *Bob Marshall Alliance v. Watt,* 685 F.Supp. at 1523. Pursuant to the mandate of the Ninth Circuit of Appeals, this court was directed to "clarify its order and to determine the specific steps to be taken with respect to the various Deep Creek leases." *Bob Marshall Alliance v. Hodel,* 852 F.2d at 1230.[3]

The federal defendants maintain the appropriate remedy to be utilized in the present case is to continue the injunction against lease activities in the Deep Creek area until such time as the federal defendants have fully complied with the requirements of NEPA and the ESA. The federal defendants read the language utilized by the Ninth Circuit to suggest that this court must merely enjoin lease activity rather than cancel the leases.

In response, the plaintiffs, as well as defendant Kohlman, contend the leases must be set aside rather than merely suspended, to assure, *inter alia,* compliance with NEPA's requirement that the federal defendants fully consider the "no-action" alternative before leasing the Deep Creek area. Plaintiffs view the situation presented in this case as distinct from that addressed by the court in *Conner v. Burford* since the federal defendants in the present case failed to consider the "no-leasing" option. From the plaintiffs' perspective, the Ninth Circuit's acknowledgement of this additional factor should be viewed as indic-

ative of that court's opinion that this distinguishing factor alone justifies setting aside, rather than suspending, the Deep Creek leases.

The federal defendants suggest, however, that this omission is simply another factor to be considered in determining whether the plaintiffs have made the requisite showing that cancellation of the leases, as opposed to suspension, is necessary to avoid irreparable injury and further the public interest.

The proper remedy ordinarily to be utilized to correct substantial violations of the procedural requirements of NEPA and the ESA is an injunction. *Bob Marshall Alliance v. Hodel,* 852 F.2d at 1230 (*citing, Thomas v. Peterson,* 753 F.2d 754, 764 (9th Cir.1985)). In *Thomas v. Peterson,* the Ninth Circuit specifically noted that absent "unusual circumstances", an injunction is the appropriate remedy for violation of NEPA's procedural requirements. 753 F.2d at 764. However, unusual circumstances are presented in this action which warrant an uncommon remedy.

The crux of the plaintiffs' challenge in this case is that the federal agencies failed to give full and meaningful consideration to the "no-leasing" alternative. *Bob Marshall Alliance v. Hodel,* 852 F.2d at 1230. "By definition, the no-leasing option is no longer viable once the *leases have been issued;* it *must be considered* before any action is taken or the statutory mandate becomes ineffective." 852 F.2d at 1229, n. 4 (emphasis supplied).

The court agrees with the plaintiffs that the failure of the federal agencies to consider the no-action alternative with respect to their issuance of the Deep Creek leases distinguishes the present situation from the situation addressed in *Conner v. Bur-*

---

Consequently, there remain eight leases which are directly affected by disposition of the present action.

**3.** In *Conner v. Burford,* 836 F.2d 1521 (9th Cir. 1988), similar language was found by the Ninth Circuit to be unclear. 836 F.2d at 1541. Consequently, the appellate court modified this court's order to provide that the federal defen-

dants were enjoined from permitting any surface disturbing activity to occur on any of the leases at issue until such time as the federal defendants fully complied with NEPA and ESA. *Id.* The court considered the modification necessary to avoid the harsh result of completely divesting the lessees of their property rights. *Id.* at n. 49.

*ford. Bob Marshall Alliance v. Hodel,* 852 F.2d at 1230.[4] Acknowledging this additional omission on their part, the federal agencies nonetheless assert that to justify a complete cancellation of the Deep Creek leases, plaintiffs must show that mere suspension of the leases would operate to cause an irreparable injury and alter the public interest.

In the exercise of its traditional equitable jurisdiction, a federal court "must balance the competing claims of injury and must consider the effect on each party of granting or withholding of the requested relief." *Amoco Production Co. v. Village of Gambell,* 480 U.S. 531, 542, 107 S.Ct. 1396, 1402, 94 L.Ed.2d 542 (1987). Nothing in the NEPA indicates that Congress intended to restrict or deny federal courts traditional equitable discretion. *Save the Yaak Committee v. Block,* 840 F.2d 714, 722 (9th Cir.1988). The issue presented for determination reduces to whether or not the remedy of cancellation of the subject leases is consistent with the standard recognized by the Court in *Village of Gambell.*[5]

The grant of equitable jurisdiction to the federal courts encompasses jurisdiction to ensure compliance with the mandate of a federal statute. *See, Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312–313, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982). " 'Unless the statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.' " *Romero–Barcelo,* 456 U.S. at 313, 102 S.Ct. at 1804 (*quoting, Porter v. Warner Holding Co.,* 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332 (1946)).[6] The plaintiff suggests, however, that with respect to the ESA, the equitable jurisdiction of this court is limited. *See, Northern Cheyenne Tribe v. Hodel,* 851 F.2d 1152, 1155–1156 (9th Cir.1988) (*citing, TVA v. Hill,* 437 U.S. 153, 173–174, 98 S.Ct. 2279, 2291, 57 L.Ed.2d 117 (1978)). Accordingly, the plaintiffs assert the court must aggressively employ injunctive relief to remedy the federal defendants' violations of the ESA. The defendants take the position, however, that the plaintiffs' preferred remedy of cancellation is inconsistent with the Supreme Court's standard for injunctive relief enunciated in *Village of Gambell.*

In the exercise of its equitable jurisdiction, the court must ascertain the means essential to ensuring compliance with the

---

4. In *Conner v. Burford,* the Ninth Circuit undertook to clarify an almost identical order as that issued by this court in the present case, construing the order as an injunction against "surface disturbing activity ... on any of the leases until [the agencies] have fully complied with NEPA and ESA." 836 F.2d at 1541. This aspect of the Ninth Circuit's decision in *Conner v. Burford,* however, must be considered in light of the procedural posture of the case. First, the plaintiffs/appellees in *Conner v. Burford* acquiesced in the federal agencies' position that the leases should not be set aside in order to avoid possible reversal on the grounds the rights of indispensable parties not previously joined as defendants have been prejudiced. 836 F.2d at 1541. Second, the Ninth Circuit recognized that modification of this court's Judgment setting aside the leases would operate to "avoid a joinder's stymie." 836 F.2d at 1541, n. 49. A similar joinder issue is absent in the present case since all lessees were originally named as defendants.

5. Section 10(e) of the Administrative Procedure Act (5 U.S.C. § 706), the Act under which this court conducts its review of the challenged agency action, states:

The reviewing court shall
(2) hold unlawful and set aside agency action, findings and conclusions found to be .
(D) without observance of procedure required by law....

The meaning of "set aside agency action" as used in subsection (2) is not expressly set forth in the statute, nor is the meaning readily gleaned from the legislative history attendant the Act. S.Doc. No. 248, 79th Cong., 2d Sess. (1946). However, 5 U.S.C. § 706(2) does not operate to restrict the court's equitable jurisdiction. *See, e.g., Conner v. Burford, supra; Port of Astoria, Oregon v. Hodel,* 595 F.2d 467 (9th Cir.1979). Consequently, 5 U.S.C. § 706(2) does not alter the traditional standard for imposing equitable relief as discussed in *Village of Gambell,* but the remedy imposed by a court reviewing agency action under the Administrative Procedure Act must be consistent with the traditional principles governing equitable relief, as articulated in *Village of Gambell,* 480 U.S. at 544, 107 S.Ct. at 1403.

6. The parties acknowledge that nothing in the NEPA indicates that Congress intended to limit the federal court's equitable jurisdiction. *See, Save the Yaak,* 840 F.2d at 722.

mandate of the statute at issue. *See, Village of Gambell*, 480 U.S. at 543, 107 S.Ct. at 1403. Consequently, the court must determine, under the circumstances presented, the appropriate means to ensure compliance with the NEPA and ESA by the federal defendants in relation to their decision to issue leases in the Deep Creek area.[7]

█ The court finds the remedy properly imposed for the substantial procedural violations of NEPA and the ESA occasioned by the federal defendants' issuance of the Deep Creek leases is a cancellation of those leases. Cancellation of the leases is, in this court's opinion, the only remedy which will effectively foster NEPA's mandate requiring informed and meaningful consideration of alternatives to leasing the Deep Creek area, including the no-leasing option. Cancellation of the leases is the only remedy which will effectively ensure the goal envisioned by NEPA, particularly 42 U.S.C. § 4332(2)(E) (1982), by guaranteeing, to the fullest extent possible, that the defendant agencies have studied, developed and described alternatives, including the no-action alternative. *See, Conner v. Burford*, 836 F.2d at 1532.

The federal defendants caution the court that by cancelling the leases the court would venture into the same pitfall that the Supreme Court condemned in *Village of Gambell*, i.e., focusing on the statutory procedure rather than the underlying substantive policy the process was designed to effect. *Village of Gambell*, 480 U.S. at 544, 107 S.Ct. at 1403. The substantive policy of NEPA and the ESA, the federal defendants submit, would be best served by a continued injunction of lease activity until such time as the federal defendants have corrected the NEPA and ESA deficiencies, and decided whether the leases should be rescinded, continued or modified. The federal defendants suggest the rationale expressed by the Ninth Circuit in *Conner v. Burford* compels this conclusion.[8] The court disagrees. Consideration of alternatives is critical to the goals of NEPA. The court is of the opinion that full and

---

7. In making this determination, the court is mindful of the Ninth Circuit's directive that this court give due consideration to that court's decision in this case as well as its holding in *Conner v. Burford, supra, Northern Cheyenne Tribe v. Hodel, supra,* and *Save the Yaak Committee v. Block, supra.* The primary significance of the appellate decision in this case as well as *Conner v. Burford* lies in the Ninth Circuit's recognition of the fact that a lease "opens the door to a potentially harmful post-leasing activity, it involves unresolved conflicts concerning alternative uses of available resources"; NEPA therefore requires that alternatives—including the no-leasing option—be given full and meaningful consideration. *Bob Marshall Alliance v. Hodel*, 852 F.2d at 1229. "[B]y definition, the no-leasing option is no longer viable once the leases have been issued; it must be considered before any action is taken or the statutory mandate becomes ineffective." *Id.*, no. 4. The court's conclusions in this regard were prompted by its appreciation of the goal of NEPA, particularly 42 U.S.C. § 4332(2)(E) (1982):

> The goal of the statute is to ensure 'that federal agencies infuse in project planning a thorough consideration of environmental values.' *Conner*, 836 F.2d at 1532. The consideration of alternatives requirement furthers that goal by guaranteeing that agency decision makers '[have] before [them] and take [ ] into proper account all possible approaches to a particular project (*including total abandonment of the project*) which would alter the environmental impact and the cost-benefit balance'.

*Calvert Cliffs' Coordinating Comm., Inc. v. United States Atomic Energy Commission*, 449 F.2d 1109, 1114 (D.C.Cir.1971) (emphasis added). NEPA's requirement that alternatives be studied, developed and described both guides the substance of environmental decision making and provides evidence that the mandated decision making process has actually taken place. *Id.* Informed and meaningful consideration of alternatives—including the no action alternative—is thus an integral part of the statutory scheme.

*Bob Marshall Alliance v. Hodel*, 852 F.2d at 1228. The remedy ultimately determined by this court to be proper must be one which effectively fosters the goal of NEPA.

8. As noted, the federal defendants argue that the action taken by the Ninth Circuit in clarifying the order entered by this court in *Conner v. Burford* "setting aside" the issuance of oil and gas leases is indicative of the proper remedy which this court should employ in relation to the Deep Creek leases. Contrary to the suggestion of the federal defendants, *Conner v. Burford* is distinguishable. As expressly emphasized by the Ninth Circuit, "[h]ere we face an additional factor not present in *Conner,* namely the agencies' failure to consider the no-action alternative." *Bob Marshall Alliance v. Hodel*, 852 F.2d at 1230. It is precisely this additional factor which compels the utilization of a more comprehensive remedy.

meaningful consideration of the no-action alternative can be achieved only if all alternatives available with respect to utilization of the Deep Creek Further Planning Area are developed and studied on a clean slate. In this manner, the mandate of NEPA will remain effective.

### C. Lessee Kohlman

Defendant Kohlman asserts his federal leases should be "set aside" and returned to application status, thereby preserving his preference right to the leases in the event they are ultimately reissued. In addition, Kohlman maintains that, as a matter of equity, the court should order restitution of the rentals he paid on the subject leases. Kohlman originally moved the court for leave to amend his answer to add a cross-claim seeking the refund of the rental payments. The federal defendants opposed Kohlman's motion, asserting jurisdiction over Kohlman's claims vested in the United States Claims Court. Thereafter, Kohlman filed an amended motion, seeking leave to. assert, as an alternative claim, five breach of contract claims seeking damages in the amount of $10,000 per claim. Kohlman expressly waived any recovery in excess of $10,000 per claim, so as not to preclude this court from exercising jurisdiction over his claims.

The propriety of granting leave to amend pleadings is a matter vested in the sound discretion of the trial court. *See, Mende v. Dunn & Bradstreet, Inc.,* 670 F.2d 129, 131 (9th Cir.1982); *Jordan v. County of Los Angeles,* 669 F.2d 1311 (9th Cir.1982), *vacated on other grounds,* 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982). In exercising this discretion, a court is to be guided by the underlying purpose of Rule 15—to facilitate decision on the merits, rather than on the pleadings or technicalities. *Id., citing, Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–103, 2 L.Ed.2d 80 (1957).

The court is compelled to DENY Kohlman's motion to amend. Kohlman paid the rentals on the subject leases despite the knowledge of plaintiffs' environmental challenge to the leases' validity. The court concurs with the federal defendants' assertion that Kohlman knowingly assumed the business risk of an injunction and, as a result, may not look to the government as his guarantor with respect to the rental payments. Consequently, the court deems it appropriate to DENY Kohlman's motion for leave to file an amended answer.

## CONCLUSION

For the reasons set forth herein, the court holds:

(1) that the actions of the defendant agencies allowing the issuance of oil and gas leases in the Deep Creek Further Planning Area are hereby set aside and the leases issued cancelled. The defendant agencies are enjoined from making further recommendations to lease and issuing leases pending compliance with NEPA, agency regulations, and the ESA;

(2) the motions for summary judgment on behalf of the federal defendants and defendant Kohlman are hereby DENIED; and

(3) defendant Kohlman's motion to file an amended Answer is hereby DENIED.

IT IS SO ORDERED.