**Nancy PALUMBO d/b/a Crayons Publications, Plaintiff,**

v.

**Angelo ROBERTI, Everything Educational, Inc. and The Federal Deposit Insurance Corporation, Defendants.**

Civ. A. No. 92–11468–GN.

United States District Court, D. Massachusetts.

July 6, 1993.

Keith E. Kiper, Law Offices of Thomas S. Francis, Boston, MA, for plaintiff.

Roger D. Matthews, Madan & Madan, James L. Brawley, Lee S. MacPhee, Morrison, Mahoney & Miller, Boston, MA, for defendants.

GORTON, District Judge.

Having considered Limited Objection of F.D.I.C. filed July 6, 1993, Report and Recommendation is accepted and adopted.

REPORT AND RECOMMENDATION RE: THE FEDERAL DEPOSIT INSURANCE CORPORATION'S MOTION TO DISMISS

ORDER RE: MOTION OF DEFENDANT, ANGELO ROBERTI, FOR LEAVE TO FILE CROSS–CLAIM

June 24, 1993

BOWLER, United States Magistrate Judge.

Pending before this court are two related motions (Docket Entry ## 3 & 14) involving the ability of defendant The Federal Deposit Insurance Corporation ("FDIC") to assert a defense based on the alleged failure of plaintiff Nancy Palumbo d/b/a Crayons Publications ("plaintiff") and defendant Angelo Roberti ("Roberti") to exhaust the mandatory administrative remedies provided by the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"). 12 U.S.C. §§ 1821(d)(5)–(14). On May 20, 1993, this court held a hearing and took the motions (Docket Entry ## 3 & 14) under advisement.

## BACKGROUND

Plaintiff originally filed this action in Massachusetts Superior Court on May 29, 1992, against the FDIC and Roberti. On June 15, 1992, the FDIC filed a notice of removal. On July 24, 1992, Roberti filed an answer and presently moves for leave to file two omitted cross claims against the FDIC: one for contribution and the other for the FDIC's alleged violation of Massachusetts General Laws chapter 21E ("chapter 21E").

As alleged in the unverified complaint, this action stems from a rainstorm and resulting flood which occurred on June 2, 1989, on property located in Milford, Massachusetts, owned and occupied by the Home National Bank of Milford ("bank property"). Roberti owned a building adjacent to the bank property ("the premises") and leased a portion of the building to Everything Educational at the time of the flood. Everything Educational, with Roberti's consent, allowed plaintiff to use a portion of the basement in the premises to create and store art work used in her business, Crayons Publications. (Docket Entry # 2, Complaint).

As a result of the June 2, 1989 rainstorm, oil and water allegedly seeped from the bank property into the basement of the premises. The seepage of water and oil purportedly destroyed plaintiff's art work and related materials. Count I of the complaint alleges that Roberti and the Home National Bank of Milford ("Home National") should have foreseen the possibility of oil seepage. The resulting unreasonable interference with Crayons Publications' ability to use the basement

constituted a nuisance, according to the complaint. Plaintiff's remaining counts are for negligence on the part of Roberti and Home National (count II), defective condition of the premises (count III), failure to warn plaintiff of the defective condition of the premises (count IV),[1] failure on the part of Everything Educational to use due care with respect to its storage of plaintiff's materials (count V)[2] and violation of chapter 21E on the part of Home National and its successor in interest, the FDIC (count VI). (Docket Entry # 2, Complaint).

According to his deposition testimony, Roberti purchased the Claflin Building, i.e., the premises, in 1979. Prior tenants informed Roberti of an oily smell in the basement of the premises. Before plaintiff moved her materials into the basement, Roberti personally observed oil seeping in through cracks in the wall. Prior to Home National's closure, Roberti participated in real estate closings for Home National. Shortly after the June 2, 1989, flood, Roger Robbins, President of Home National at the time, contacted Roberti and advised him that Home National was conducting an investigation. Roberti hired an engineer to inspect the premises. Home National paid for the engineer's services up until its closure. Roberti expected Home National "to do something" inasmuch as the "oil came from their property." After the FDIC took over the premises, Roberti and/or his engineer spoke with a Mr. Greenberg of the FDIC and/or his engineer(s) regarding the premises. The FDIC did not continue to pay for the services of Roberti's engineer, according to Roberti. (Docket Entry # 18).

Roberti maintained accounts with Home National. He notes that "it was in the newspaper that the FDIC came in and that was that." When asked if he received written notice of the FDIC's appointment as receiver of Home National, he replied "no, BayBank took over. Nobody notified me that the FDIC took over." (Docket Entry # 18).

Plaintiff avers that Crayons Publications was not a creditor or a depositor with Home National. She further avers that Crayons Publications never received notice of the filing deadline for claims brought against the FDIC as a result of the receivership of Home National. She also avers that "[i]n early Fall, 1991, I realized [the bank property] was contaminated by oil which was the source of the oil which leaked into [the premises] where I had stored bilingual educational materials." Finally, she avers that the Commonwealth of Massachusetts Department of Environmental Quality Engineering issued a Preliminary Assessment Report ("DEQE report") dated October 18, 1991, with respect to the bank property and attaches a copy of the report to her affidavit. (Docket Entry # 7).

At her deposition, plaintiff stated that Nancy Palumbo d/b/a Crayons Publications had an account at Home National. She also states that she maintained a credit card in her own name at Home National. She recalls receiving notice that her credit card would be run by another bank inasmuch as Home National was closing. She similarly recalls receiving notice that Home National was closing in connection with the Nancy Palumbo d/b/a Crayons Publications checking account. Thereafter, plaintiff "closed out" the Nancy Palumbo d/b/a Crayons Publications checking account. (Docket Entry # 21).

The complaint alleges that on or about June 1, 1990, the FDIC became the successor in interest to the bank property by virtue of a liquidation of Home National. The complaint additionally alleges that the FDIC owns and controls the bank property. (Docket Entry # 2, Complaint).

By affidavit, Fred A. Raish, an FDIC employee, avers that he searched the FDIC's records with respect to Home National. His search revealed that "no claims have been made by Nancy Palumbo d/b/a/ Crayon (sic) Publications" against either the FDIC or Home National. Public notice of the right to present claims to the FDIC was published in the Boston Globe on June 6, July 6 and August 7, 1990. The bar date for filing administrative claims with the FDIC in con-

---

1. Plaintiff brings counts III and IV against Roberti and Everything Educational.

2. Plaintiff brings this count against Everything Educational.

nection with Home National was September 6, 1990. (Docket Entry # 5).

In opposition to the FDIC's motion to dismiss, plaintiff argues that she was neither a creditor nor a depositor with Home National at the time it was declared insolvent. Consequently, she maintains that she did not receive notice of the administrative filing deadline. She similarly contends that her claim is excepted under 12 U.S.C. § 1821(d)(5)(C)(ii)(I) and (II) inasmuch as she did not receive written notice as described in 12 U.S.C. § 1821(d)(3)(B) because her claim is one for property damage. Plaintiff therefore attempts to distinguish her case on the basis that she is claiming property damage as a "non-creditor." She argues that, although the bar date was September 6, 1990, it remained unclear at that time how the oil entered the premises because the DEQE report was not complete until October 19, 1991. She maintains that the discovery rule precludes application of the bar date. (Docket Entry # 6).

In support of his motion for leave to file a cross claim against the FDIC under chapter 21E, Roberti reiterates a number of plaintiff's arguments. In addition, he contends that his cross claim is not against the assets of a "failed institution" but is against "the FDIC in the first instance." (Docket Entry # 10).

## I. THE FEDERAL DEPOSIT INSUR-ANCE CORPORATION'S MOTION TO DISMISS (DOCKET ENTRY # 3)

On a motion to dismiss, all well pleaded facts are taken in favor of the non-moving party, i.e., plaintiff. Inasmuch as the motion raises this court's subject matter jurisdiction, however, the burden of persuasion rests with the party asserting the affirmative of the proposition, i.e., plaintiff. *General Contracting & Trading v. Interpole, Inc.*, 899 F.2d 109, 115 (1st Cir.1990).

In support of dismissal, the FDIC presents this court with certain deposition transcripts and affidavits. Introduction of material outside a complaint is generally improper under a Rule 12(b) motion to dismiss. The motion, however, "raises a jurisdictional issue unrelated to the merits of the case. Accordingly, [this] court's consideration of matters outside the pleadings does not transform the motion into one for summary judgment." *Espinosa v. DeVasto*, 818 F.Supp. 438 (D.Mass.1993) (court considered affidavits outside the complaint).

FIRREA established a comprehensive administrative procedure for adjudicating claims brought against failed institutions. 12 U.S.C. §§ 1821(d)(5)–(14). As succinctly stated by United States District Judge Nathaniel M. Gorton, "participation in the administrative claims review process is *mandatory* [emphasis added] for all parties asserting claims against a failed institution, regardless of whether the lawsuit to enforce a claim was initiated prior to the appointment of a receiver." *Performance Auto Sales v. Federal Deposit Insurance Corporation*, 1993 WL 23718 at *1 (D.Mass. January 15, 1993) (citing *Marquis v. FDIC*, 965 F.2d 1148, 1151 (1st Cir.1992)). The *Marquis* court held that "where a claimant has been *properly notified* [emphasis added] of the appointment of a federal insurer as receiver, 12 U.S.C. § 1821(d)(3)(B)–(C), and has nonetheless failed to initiate an administrative claim within the filing period, 12 U.S.C. § 1821(d)(3)(B)(i), the claimant necessarily forfeits any right to pursue a claim against the failed institution's assets in any court." *Marquis v. FDIC*, 965 F.2d at 1152; *Espinosa v. DeVasto*, 818 F.Supp. 438 (D.Mass.1993) (quoting this section of *Marquis*, albeit omitting statutory citations).

This court therefore reads *Marquis* to require the FDIC to comply with the notification provisions contained in section 1821(d)(3)(B) and (C). Upon such compliance and provided a claimant fails to timely exhaust administrative remedies, section 1821(d)(5)(C)(i) provides that claims filed after the bar date shall be disallowed.[3]

---

**3.** This court therefore respectfully disagrees with the conclusion reached by the court in *Meliezer v. Resolution Trust Company*, 952 F.2d 879 (5th Cir.1992). *Meliezer*, 952 F.2d at 883 (no statuto-

ry basis for contention that notice provisions of section 1821(d)(3)(C)(ii) impose mandatory obligation and that failure to comply relieves a claimant of administrative exhaustion require-

The notice provisions of FIRREA are detailed in subsections 1821(d)(3)(B) and (C). These subsections require the FDIC to "publish a notice to the depository institution's creditors to present their claims, together with proof, to the [FDIC] by a date specified in the notice which shall be not less than 90 days after the publication of such notice." 12 U.S.C. § 1821(d)(3)(B)(i). The FDIC must republish the notice both one and two months after the initial publication date. 12 U.S.C. § 1821(d)(3)(B)(ii). In addition, the FDIC, as receiver, must mail a similar notice to creditors shown on the failed institution's books at their last known address. 12 U.S.C. § 1821(d)(3)(C)(i). Finally, upon discovery of the name and address of a claimant not appearing on the institution's books, section 1821(d)(3)(C)(ii) requires the FDIC to mail a similar notice to the claimant within 30 days. *See generally Althouse v. Resolution Trust Corporation,* 969 F.2d 1544, 1545 (3rd Cir. 1992) (explaining notice procedures).

Provided the FDIC complies with these notice provisions, *see Marquis,* 965 F.2d at 1152, section 1821(d)(5)(C) dictates that all claims filed after the bar date, in this instance September 6, 1990, "shall be disallowed and such disallowance shall be final." 12 U.S.C. § 1821(d)(5)(C)(i). Plaintiff argues that she was not properly notified.[4]

In the case at bar, it is undisputed that the FDIC published notice of the right to present claims with respect to Home National on June 6, July 6 and August 7, 1990.[5] Accord-

ing to her deposition testimony, plaintiff remembers receiving a notice in connection with her checking account maintained under the name Nancy Palumbo d/b/a Crayons Publications. Upon receipt of the notice, plaintiff remembers changing this checking account to a different banking institution. She unequivocally avers, however, that "Crayons Publications never received notice of a filing deadline for an administrative claim."

On a motion to dismiss, this court is required to view the facts in plaintiff's favor although the burden of persuasion as to jurisdiction rests with plaintiff. Consequently, although plaintiff remembers receiving a notice, this court must view the facts contained in her affidavit favorably. Therein plaintiff avers that Crayons Publications did not receive notice of a deadline for filing an administrative claim as required under section 1821(d)(3)(C). In addition, although plaintiff avers that Crayons Publications was not a creditor or a depositor of Home National, the evidence is conflicting. Plaintiff testified at her deposition that Crayons Publications maintained a checking account at Home National. Taking the facts in plaintiff's favor, this court concludes that Crayons Publications was a creditor for purposes of the motion to dismiss.[6] Accordingly, this court finds that additional factual proof is needed with respect to whether the FDIC complied with the notice provisions of section

---

ment); *see also Espinosa v. DeVasto,* 818 F.Supp. 438 (D.Mass.1993) (citing *Meliezer,* 952 F.2d at 882–883).

The language contained in section 1821(d)(3)(B) and (C) unequivocally states that the receiver "shall" provide the applicable notice detailed therein. As previously noted, the language in *Marquis* supports this interpretation inasmuch as it expressly cites to section 1821(d)(3)(B) and (C).

4. Plaintiff does not, however, expressly argue that the FDIC failed to comply with section 1821(d)(3)(C). Rather, she relies on the discretionary provisions of *section 1821(d)(5)(C)(ii).* In addition, the FDIC did not argue that this subsection is discretionary. Nevertheless, this court is faced with a decision regarding its jurisdiction to hear this case. It therefore has the power and the duty to independently determine and assess its jurisdictional basis. *See Mortenson*

*v. First Federal Savings and Loan Association,* 549 F.2d 884, 891 & n. 5 (3rd Cir.1977).

5. The FDIC therefore complied with section 1821(d)(3)(B).

6. Section 1821(d)(3)(C) requires the FDIC to mail a notice "to any creditor on the institution's books." 12 U.S.C. § 1821(d)(3)(C). In the event Crayons Publications was not a creditor and plaintiff failed to receive notice, this court will address application of the bar date upon a further development of the record concerning whether Crayons Publications was a creditor of Home National at the time of receivership and whether plaintiff received notice. Because this court resolves the motion to dismiss in plaintiff's favor, this court need not address this argument at this time. This court does, however, discuss a closely related argument involving Roberti in section II of this Order.

1821(d)(3)(C) as this provision applies to plaintiff.

This case is distinguishable from *McLaughlin v. FDIC,* 796 F.Supp. 47, 48–49 (D.Mass.1992) inasmuch as the court in *McLaughlin* was presented with a motion for summary judgment and also had additional facts evidencing a mailing of the notice to McLaughlin as well as the affidavit from Fred A. Raish, coincidentally the same individual submitting an affidavit in the case at bar.[7] Denial without prejudice of the FDIC's motion to dismiss is therefore appropriate.

This court will nevertheless briefly address a number of the remaining arguments. Initially, it is important to recognize that plaintiff did not file this case against Home National. Rather, plaintiff filed this case against the FDIC in May 1992, well after the appointment of the FDIC as receiver. In post-receivership cases, a court must dismiss a claim for lack of subject matter jurisdiction in accordance with section 1821(d)(13)(D) if a plaintiff fails to exhaust FIRREA's administrative remedies. *Espinosa v. DeVasto,* 818 F.Supp. 438 (D.Mass.1993) (prior to exhaustion of administrative process, "no court may exercise jurisdiction over the claim"). The primary purpose of the exhaustion scheme is to allow the FDIC to perform its statutory duty of efficiently resolving claims *without* [emphasis added] resort to litigation. *See Bank of New England, N.A. v. Callahan,* 758 F.Supp. 61, 64 (D.N.H.1991) (goal of FIRREA is the efficient resolution of claims).

Nor does this court find persuasive either plaintiff's or Roberti's attempts to construe this case as one for property damage or one filed against the FDIC in the first instance for a violation of chapter 21E. Plaintiff's claims and Roberti's cross claims will inevitably seek payment from the FDIC in its capacity as receiver of Home National. Such claims are no different than claims seeking payment from the assets of Home National. The reach of section 1821(d)(13)(D) is undeniably broad. It applies not only to creditors but also to claims against the assets of the failed institution.

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been assigned receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D).[8] As discussed at length *infra* in section II of this Order, a recent First Circuit opinion supports this construction with respect to the reach of section 1821(d)(13)(D). *Heno v. Federal Deposit Insurance Corporation,* 996 F.2d 429 (1st Cir.1993).

In addition, plaintiff's and Roberti's reliance on language contained in section 1821(d)(5)(C)(ii) is misplaced.[9] The language of this subsection is discretionary and there is no evidence that the FDIC is inclined to allow plaintiff to invoke this statutory exception. *See In re Purcell,* 150 B.R. 111, 116 (D.Vt.1993); *Adoue v. Federal Deposit Insurance Corporation,* 779 F.Supp. 852, 853 (N.D.Tx.1991) (noting that FDIC was not inclined to consider plaintiff's claims under 12 U.S.C. § 1821(d)(5)(C)(ii) and dismissing

---

7. This court expresses no opinion as to whether, under the standard of review applicable to motions for summary judgment, plaintiff's claims against the FDIC should be disallowed.

8. As similarly recognized in *Marquis,* "[t]he jurisdictional bar of section 1821(d)(13)(D) reaches all claims seeking payment from the assets of the affected institution, all suits seeking satisfaction from those assets; and all actions for a determination of rights vis-a-vis these assets." *Marquis v. FDIC,* 965 F.2d at 1152.

9. Subsection (ii) creates a statutory exception to the bar date by stating that a "claim *may* [emphasis added] be considered by the receiver if (I) the claimant did not receive notice of the appointment of the receiver in time to file such claim before [the bar date]; and (II) such claim is filed in time to permit payment of such claim." 12 U.S.C. § 1821(d)(5)(C)(ii).

claims for lack of subject matter jurisdiction).[10]

Plaintiff and Roberti also attempt to use the discovery rule as a means to avoid the mandatory jurisdictional *requirements of* FIRREA. They maintain that plaintiff was unable to present a claim to the FDIC because she was unaware of the means by which the oil entered the premises until publication of the DEQE report on October 18, 1991. They also employ this argument in their attempt to fit within the confines of section 1821(d)(5)(C)(ii)(I). This court, however, is unpersuaded by this argument. *Espinosa v. DeVasto*, 818 F.Supp. 438 (D.Mass. 1993) (rejecting estoppel argument inasmuch as estoppel cannot confer subject matter jurisdiction).

Plaintiff also relies on *Coit Independence Joint Venture v. Federal Savings and Loan Insurance Corporation*, 489 U.S. 561, 587, 109 S.Ct. 1361, 1375, 103 L.Ed.2d 602 (1989) for the proposition that litigation is viable in circumstances where an administrative claim process is inadequate. *Coit* was decided prior to the enactment of FIRREA and, as discussed in detail by the court in *Circle Industries*, Congress designed FIRREA to address the procedural and constitutional concerns raised by the Court in *Coit*. *Circle Industries v. City Federal Savings Bank*, 749 F.Supp. 447, 453–455 (E.D.N.Y.1990) *aff'd* 931 F.2d 7 (2d Cir.1991). Provided the FDIC adequately complied with the notice provisions of FIRREA, the fact that plaintiff was unaware of the need to present her claims to the FDIC on or before September 6, 1990, is irrelevant. *See Espinosa v. De-*

*Vasto*, 818 F.Supp. 438 (D.Mass.1993) (fact that claimant was unaware of need to file administrative claim deemed irrelevant).

Nor does the fact that the DEQE report was not issued until October 1991 provide a basis to avoid application of FIRREA's administrative claims process. Chapter 21E imposes liability on the owner or operator of "a site from which there is or has been a release or threat of release of oil." Mass. Gen.L. ch. 21E, § 5(a)(1); *see also* Mass. Gen.L. ch. 21E, § 5(a)(5) (imposing civil liability to any person who caused or is legally responsible for release of oil); *Wellesley Hills Realty Trust v. Mobil Oil Corporation*, 747 F.Supp. 93, 95–97 (D.Mass.1990) (discussing distinction between section 5(a)(1) and section 5(a)(5) and the necessary allegations in order to state a claim). Plaintiff's cause of action under section 5(a)(1) therefore existed at the time of the FDIC's appointment as receiver of Home National. Prior thereto, plaintiff had a cause of action against Home National which was the owner of the site and/or the person causing the release of oil under section 5(a)(1) and/or 5(a)(5).[11] It is therefore evident to this court that plaintiff could have commenced her action against Home National at the time of the flood and thereafter against the FDIC through the administrative claims process.

## II. *MOTION OF DEFENDANT, ANGELO ROBERTI, FOR LEAVE TO FILE CROSS–CLAIM (DOCKET ENTRY # 14)*

Roberti moves for leave to amend his answer to assert a cross claim for contribution

---

**10.** Neither plaintiff nor Roberti cite this court to any case construing section 1821(d)(5)(C)(ii) as a mandatory requirement. ·This court's independent research points to a contrary result. Inasmuch as this court denies the FDIC's motion to dismiss without prejudice on other grounds, the issue is premature. Nevertheless, should the FDIC renew its motion and should plaintiff and/or Roberti seek to rely on section 1821(d)(5)(C)(ii), they are directed to provide *case* authority for their assumption that this section imposes a mandatory obligation upon the FDIC.

**11.** Section 11 A(4) of chapter 21E states the pertinent limitations period. It provides that actions:

by persons other than the commonwealth ... shall be commenced within three years after the date that the person seeking recovery *first suffers the damage* [emphasis added] or within three years after the date that the person seeking recovery of such damage discovers or reasonably should have discovered that the person against whom the action *is being brought* is a person liable ... whichever is later.

Mass.Gen.L. ch. 21E, § 11 A(4). Section 11 A(2) *contains a similar provision* for actions to recover reimbursement in the event of a "response action" under section 4A.

and a cross claim for violation of chapter 21E. (Docket Entry # 14). Although technically not itself a pleading, a cross claim must be stated in a pleading and is governed by Rule 15, Fed.R.Civ.P. *In re Cessna Distributorship Antitrust Litigation,* 532 F.2d 64, 67 & n. 7 (8th Cir.1976). Inasmuch as 20 days has passed since service of the complaint, Roberti can amend his answer only by leave of court. Rule 15(a), Fed.R.Civ.P.

█ In deciding whether to allow leave to amend an answer, a court "must consider whether the amendment, if allowed, would prejudice the party opposing it." *In re Cessna Distributorship Antitrust Litigation,* 532 F.2d at 68; *accord Hedges Enterprises v. Continental Group, Inc.,* 84 F.R.D. 615, 617 (D.Pa.1979) (grounds to deny amendment to answer include inexcusable and undue delay, prejudice and futility). In addition to prejudice, this court may deny leave to amend an answer upon a showing of bad faith, inexcusable delay and, more importantly for purposes of the case at bar, futility. *Steven Operating, Inc. v. Home State Savings,* 105 F.R.D. 7, 10 (S.D.Ohio 1984) (motion to amend answer); *Hedges Enterprises v. Continental Group, Inc.,* 84 F.R.D. at 617. Finally, in exercising this court's discretion on a motion for leave to amend an answer, this court is guided by the underlying purpose of Rule 15 which is "to facilitate decision on the merits, rather than on the pleadings or technicalities." *Bob Marshall Alliance v. Lujan, Jr.,* 804 F.Supp. 1292, 1298 (D.Mont.1992).

█ Turning to Roberti's cross claim for contribution, as discussed above this court finds the majority of Roberti's arguments unavailing. At this stage, however, plaintiff's claims against the FDIC remain in this case. Inasmuch as there is insufficient evidence in the record to determine whether the FDIC complied with section 1821(d)(3)(C) as to plaintiff, this court will allow Roberti's cross claim for contribution. Although this court might find the cross claim futile upon further development of the record, this court must decide the motion based on the record presently before it.[12] Moreover, denial of leave to amend might bar Roberti from raising this claim in a subsequent suit on principles of claim or issue preclusion.

█ Turning to Roberti's cross claim for violation of chapter 21E, Roberti occupies a different position than that of plaintiff. As demonstrated by Roberti's deposition testimony, he inspected the cellar and viewed oil seeping through cracks in the wall before Everything Educational occupied the premises. (Docket Entry # 18). He also expected that Home National would "do something" about his basement because to his knowledge the oil came from the bank's property. (*Id*). Roberti also admits that he knew about the failure of Home National and that the FDIC had taken over Home National. Roberti's cause of action under chapter 21E was viable at the time the FDIC was appointed receiver of Home National. Whether Roberti knew of his obligation to promptly pursue his claim with the FDIC is irrelevant. *See Espinosa v. DeVasto,* 818 F.Supp. 438 (D.Mass.1993) (fact that claimant was unaware of need to file administrative claim deemed irrelevant).

Roberti nevertheless attempts to distinguish his claim, in part, on the basis that plaintiff was not a creditor and that FIRREA does not apply to chapter 21E inasmuch as his claim is against the FDIC "in the first instance" as opposed to a failed institution. This court rejects this argument.[13] Section 1821(d)(13)(D) reaches "any claim relating to any act or omission of [Home National] or the Corporation as receiver" as well as "any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been

---

**12.** Should the FDIC renew its motion to dismiss or present this court with a summary judgment motion, together with additional factual support, this court will, upon motion, reconsider the propriety of Roberti's cross claim and this court's jurisdiction to consider this cross claim.

**13.** This court notes, however, that Roberti's second cross claim seeks recompense against the

FDIC for damage resulting to *his* property. Consequently, contrary to Roberti's arguments, the issue under this cross claim is not whether plaintiff was a creditor or whether plaintiff had an obligation to exhaust FIRREA's administrative remedies. Rather, the issue is whether Roberti was a creditor and/or had an obligation to exhaust administrative remedies.

assigned receiver, including assets which the Corporation may acquire from itself as such receiver."

To state the obvious, the bank property, from which the oil apparently escaped, constitutes a bank "asset." Roberti's cross claim for chapter 21E liability is based on the failure, i.e., the omission, of Home National in preventing release of oil from the bank property. As a result of this omission, Home National incurred liability as the owner of a site from which there is or has been a release or threat of release of oil.

A recent First Circuit opinion supports this court's construction that the reach of section 1821(d)(13)(D) includes claims against the assets of a failed institution as well as creditor's claims. *Heno v. Federal Deposit Insurance Corporation,* 996 F.2d 429 (1st Cir.1993). In *Heno,* the court determined that the complaint adequately alleged a contract repudiation claim under section 1821(e). Consequently, the district court's dismissal for lack of subject matter jurisdiction under 1821(d) as to this compensatory claim for relief was improper. In all other respects, the court affirmed the district court decision. *Id.* at 434.

In doing so, the court carefully avoided expressly limiting the reach of 1821(d)(13)(D) to creditor's claims. Rather, throughout the opinion, the court employs the word "claim" and "claimant" in discussing the obligation to exhaust FIRREA's administrative remedies.[14] In the instant dispute, Roberti's claim is against an asset of Home National, the bank property, from which there is or has been a release of oil. This claim is the type of prereceivership claim which the administrative claims procedure of FIRREA is designed to encompass. Roberti's failure to exhaust administrative remedies, despite his

knowledge of the take over of Home National by the FDIC, deprives this court of subject matter jurisdiction over his second cross claim. As such it is futile and properly denied.

## CONCLUSION

In accordance with the foregoing, this court **RECOMMENDS**[15] that the FDIC's motion to dismiss (Docket Entry # 3) be **DENIED** without prejudice. Roberti's motion for leave to file cross claim (Docket Entry # 14) is **ALLOWED** as to his cross claim for contribution and **DENIED** as to his cross claim for violation of chapter 21E..

---

14. For example, the court states that "anyone with a 'claim' against the assets of the failed institution must submit an administrative claim to FDIC within the prescribed statutory period." *Id.* at 432 (citing to section 1821(d)(5)(C)). Thereafter, the court distinguishes *contract* repudiation claims brought directly against the FDIC under section 1821(e) from claims brought against the FDIC under 1821(d) and states the following: "Subsection 1821(d) governs only *claims* against *assets* of the failed financial institution." *Id.* at 433 (emphasis added).

15. Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the district court's order. *United States v. Escoboza Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986).