586 So.2d 474 (1991)
LACENTRA TRUCKING INC., Wenger Excavating, Inc., KJK Enterprises d/b/a Mr. Electric, Tarmac Florida Inc., and Mayfair Plumbing, Inc., Appellants,
v.
FLAGLER FEDERAL SAVINGS AND LOAN ASSOCIATION OF MIAMI, a United States Corporation, Appellee.
No. 90-2826.
District Court of Appeal of Florida, Fourth District.
September 25, 1991.
Rehearing, Clarification and Certification Denied October 29, 1991.
*475 Cathy Jackson Lerman of Cathy Jackson Lerman, P.A., Deerfield Beach, for appellants.
Cindy J. Mishcon of Keith, Mack, Lewis, Allison & Cohen, Miami, for appellee.
FARMER, Judge.
The dispute here is a familiar one, concerning priorities between a mortgagee and a mechanic's lienor, but the precise question raised appears not to have been previously answered in a Florida decision. The issue is whether surveying, flagging and staking a construction site for an improvement within 30 days of recordation of the notice of commencement can constitute "actual commencement" within the meaning of section 713.13, Florida Statutes (1989). We think that such activity can satisfy the statute and thus reverse the summary judgment for a trial on the claims and defenses.
Section 713.13 requires an owner of real property to file a notice of commencement before actually beginning improvements to his property. Section 713.13(1)(a), Florida Statutes (1989). Subsection (2) of section 713.13, however, provides as follows:
If the improvement described in said notice is not actually commenced within 30 days after the recording thereof, such notice shall be void and of no further effect. [e.s.]
The liens of those who later perform or furnish labor, services or materials for the improvement, whether in privity with the owner or not, relate back to and attach from the date of filing of the notice of commencement. Section 713.07(2), Florida Statutes (1989).
In this case, the owner recorded a notice of commencement on July 28, 1988, for the construction of an apartment complex. On August 17, 1988, a surveying firm performed work at the site described in the notice of commencement, consisting of surveying, staking and flagging, and verification of the property boundary monuments. The owner then entered into contracts with appellant Lacentra and others [suppliers] to perform various work and furnish certain materials. Meanwhile, appellee entered into a construction loan with the owner and recorded its mortgage on December 14, 1988. All parties agree that all of the work on these contracts was performed between September 23, 1988 and January 13, 1989. Appellant and these suppliers each timely recorded claims of lien.
When the owner later defaulted under the note and mortgage, appellee brought an action to foreclose its mortgage and named appellant and the other suppliers as defendants whose interests in the subject property were inferior to its own. Appellant and the suppliers pleaded that their claims of lien were superior to appellee's, because appellee had recorded its mortgage after the recordation of the notice of commencement, and that their claims of lien, all recorded after the mortgage, related back to the date of the recordation of the notice of commencement.
Appellee brought the priority issue to the court in a motion for partial summary judgment, supported by affidavits. The owner's Director of Construction Operations for the project testified that, although the owner expected to commence construction on the project within 30 days of July 28th, he did not receive authorization from the owner to break ground until September 22nd, and that "no visible commencement of construction took place within 30 days following July 28, 1988." Appellants filed a counter affidavit from the surveyor swearing that his firm performed the field work described above at the site on August 17th "as an initial step in construction of the improvements" at the specific request of the owner.
*476 After considering legal argument from the parties, the trial court entered a partial summary judgment, containing "Findings of Fact", among which included the following:
It is clear from a review of the affidavits that no improvement was commenced within the thirty day period. The only activity the Defendants were able to suggest were [sic] the activities of the surveyor who commenced to "verify boundary monuments to the subject property." Clearly, a boundary survey does not constitute commencement under F.S. 713.13(2). Sheridan, Inc. v. Palchanis, 172 So.2d 872 (2nd DCA, 1965). Maule Industries, Inc. v. Gaines Construction Co., 157 So.2d 835 (2nd DCA, 1963). [e.o.]
R. 822. Later, the court entered a final summary judgment of foreclosure and this appeal timely ensued.
There is an old Chinese proverb that "a journey of a thousand miles begins with a single step." The question raised by this case might be thus framed as whether an edifice of a thousand bricks can actually begin with a line in the sand. Or to put it more aptly: can the construction of a building begin with a layout on the ground represented by stakes and flags? Our epistemological inquiry for this mechanic's lien "proverb" centers, as it should, on the statute and its history.
Before 1963, the subject statute was section 84.03(1), Florida Statutes (1961), which said (in part):
All liens provided by this chapter shall relate to and take effect from the time of the visible commencement of operations, except that, where demolition is involved in the work of improving, liens other than for demolition shall relate to and take effect from the visible commencement of operations excluding demolition and delivery of materials for such demolition. [e.s.]
The term "visible commencement" was defined as:
* * * the first actual work of improving upon the real property or the first delivery to the site of the improvement of materials which remain thereon until incorporated in the improvement, of such manifest and substantial character as to notify interested persons that the real property is being improved or is about to be improved.
Section 84.01, Florida Statutes (1961).
In 1963 the legislature demolished the old mechanic's lien law and adopted an entirely new scheme. See Chapter 63-135, Laws of Florida. The foregoing provisions were replaced with the text of what is now section 713.13(2) as set out above. Curiously absent in the new scheme was any definition of "commencement" or "actual commencement", and the former definitions were swept away.
It is obvious from the affidavit furnished by appellee that it had its eye on "visible commencement" within 30 days from July 28th, rather than the "actual commencement" now required by the successor statute. Similarly, it appears from the citation of Sheridan, Inc. v. Palchanis and Maule Industries, Inc. v. Gaines Construction Co. that the trial court had its attention deflected from the precise text of the current statute; for both of these decisions dealt with the former statute and the requirement of visible, rather than actual, commencement. The trial court appears to have concluded that section 713.13(2) brought back the "visibility" requirement, perhaps as a synonym for "actual".
We cannot accept the notion that such a dramatic change in the statutory text would effect no change in meaning. It is fundamental to our reading of statutes that if one is plain and unambiguous, as this one is, we have no power to read or construe it in a way that extends, modifies or limits its express terms or its reasonable and obvious implications. Holly v. Auld, 450 So.2d 217 (Fla. 1984). We see a substantial distinction between visible commencement and actual commencement.
As a matter of simple logic, a commencement might be real and genuine though not yet apparent to the eye. The precise moment when something begins, even something so tangible and formidable as an *477 apartment building, may be murky and indefinite in its origins. And surely it may even not be the same for different kinds of structures or other kinds of improvements. Or even the same structure in different places or localities. There is, in short, no single, identical commencement point for every improvement.
To verbalize just how far back we must go to find "commencement" of an improvement as the legislature used that term, we recur to the poetry of Justice Cardozo:
What is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of causation. One could carry the search for causation backward, almost without end. * * * Instead, there has been a selective process which picks the substantial causes out of the web and lays the other ones aside. As in problems of causation, so here in the search for the underlying law.
Gully v. First National Bank in Meridian, 299 U.S. 109, 117-118, 57 S.Ct. 96, 100, 81 L.Ed. 70 (1936). As he did in finding a federal source for a claim, so too must we draw distinctions in the process of improving real property between actions that are basic from those that are collateral, between those that are necessary from those that are allowable. "We shall be lost in a maze if we put that compass by." Gully, 299 U.S. at 118, 57 S.Ct. at 100. Actual commencement thus seems to imply a factual inquiry dealing with the nature of the improvement, the nature of the land, and an appreciation of the peculiar steps necessary to begin what has been planned.
There is no legal reason under the statute why the ascertainment of boundary monuments and flagging and staking might not be the exact moment of a beginning. There is some evidence in this record suggesting that this particular survey was for mortgage financing, but there is other evidence suggesting that it might have been to lay out the dimensions of the foundation of the apartment building. There is certainly nothing here establishing that, for this kind of improvement, the process of physically altering the land with a permanent structure can never begin when lines are denoted by stakes and flags on the land itself. The mere fact that for some kinds of improvements it is always later does not mean, as a matter of legal construction of the statute, that for this one and others it cannot be earlier  e.g. when the stakes and flags are laid out. The essential meaning here is that the issue is to be determined by the facts of the particular improvement and its construction.
In a motion for summary judgment it is well established under our procedure that the moving party has the obligation of showing that the record disproves the adverse party's case. Holl v. Talcott, 191 So.2d 40 (Fla. 1966). We cannot agree that appellee's affidavit conclusively showed that actual commencement did not occur within 30 days of July 28th. Nor does this record establish the absence of any evidence whatever showing that the process of improving this particular property actually began within 30 days.
We therefore conclude that a trial is required to establish what the facts are. As we are reversing for a trial, we think that the parties should be given leave to file amended pleadings with all of their precise legal claims and defenses, if they so desire.
REVERSED WITH DIRECTIONS.
STONE and GARRETT, JJ., concur.