**Josef A. ESPINOSA, a/k/a Joseph A. Espinosa, et al., Plaintiffs,**

v.

**Phillip DeVASTO, et al., Defendants.**

**CA No. 92–12625–T.**

United States District Court, D. Massachusetts.

March 30, 1993.

---

Gerard F. Mackin, Jr., Weymouth, MA, for plaintiffs.

Raymond D. Jennings, Weymouth, MA; Wilbur P. Edwards, Jr., Denzil McKenzie & Co., Cambridge, MA, James B. Levy, F.D.I.C., Franklin Consol. Office, Franklin, MA, Denzil D. McKenzie, McKenzie & Edwards, Cambridge, MA, Jennifer L. French, Sharon J. Howard, Rubinstein & Perry and Robert W. Biederman, Rubinstein & Perry, LLP, Boston, MA, for defendants.

## MEMORANDUM

TAURO, Chief Judge.

Presently before the court is a motion by the Federal Deposit Insurance Corporation ("FDIC") to dismiss plaintiffs' claims against it. The FDIC contends that the court lacks subject matter jurisdiction because plaintiffs failed to file a timely administrative claim pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). For the reasons set forth below, the FDIC's motion to dismiss is ALLOWED. Plaintiffs' claims against the re-

maining defendants are REMANDED to state court.

## I.

On January 25, 1990, Josef A. Espinosa, Janice Dayton and Star Lunch, Inc. initiated this suit against Phillip DeVasto, Lynne Houghton and Granite Co-operative Bank ("Granite") in Plymouth Superior Court. The essence of plaintiffs' claims is that defendants wrongfully induced a group of buyers to breach a purchase and sale agreement they had entered into with plaintiffs in July of 1988. The case was originally assigned for trial in the Superior Court on June 26, 1991, but was subsequently continued several times.

On December 12, 1991, the Commissioner of Banks of the Commonwealth of Massachusetts declared Granite insolvent and appointed the FDIC as its receiver. On December 17, 1991, the Supreme Judicial Court issued an order temporarily staying all state court litigation to which Granite was a party. *See* Mass.Gen.L. ch. 211, § 3; 12 U.S.C. § 1821(d)(12). On September 9, 1992, one day before the stay expired, the Superior Court allowed the parties' joint motion to reschedule the trial date in November. On November 2, 1992, three days after Granite filed an emergency motion to substitute the FDIC as a defendant, the FDIC removed the action to this court pursuant to 12 U.S.C. § 1819(b)(2)(B). On November 24, 1992 the FDIC filed this motion to dismiss, citing plaintiffs' failure to exhaust FIRREA's administrative claims review process ("ACRP").

## II.

■ Plaintiffs argue that the FDIC's motion to dismiss should be treated as a motion for summary judgment "since matters outside the pleading[s] are presented to the Court." Pls.' Opp'n ¶ 4. Were the FDIC's motion "an indirect attack on the merits of [plaintiffs'] claim[s]," *Peckmann v. Thompson*, 966 F.2d 295, 297 (7th Cir.1992), the court would be inclined to agree with this argument. *See* Fed.R.Civ.P. 12(b) ("If, on a [Rule 12(b)(6) motion], matters outside the pleading[s] are presented to and not excluded by the court, the motion shall be treated

as one for summary judgment...."). But the FDIC's motion, which is brought pursuant to Rule 12(b)(1), raises a jurisdictional issue unrelated to the merits of the case. Accordingly, the court's consideration of matters outside the pleadings does not transform the motion into one for summary judgment. *Cizek v. United States*, 953 F.2d 1232, 1233 (10th Cir.1992). *See also Doe v. Schachter*, 804 F.Supp. 53, 57 (N.D.Cal.1992) ("[W]here the jurisdictional issue is separable from the merits of the case, the court may hear evidence regarding jurisdiction, resolve existing factual disputes, and rule on that issue.").

## III.

However styled, the FDIC's motion provides this court with yet another occasion to delve into the "almost impenetrable thicket" that is FIRREA. *See Marquis v. Federal Deposit Ins. Corp.*, 965 F.2d 1148, 1151 (1st Cir.1992). Although numerous courts have blazed trails through FIRREA's "jungle of linguistic fronds and brambles", *id.*, all but the most well traveled of these routes are hopelessly overgrown with conflicting interpretations.

As evidenced by the volume of litigation they have generated, the provisions of FIRREA governing the review of administrative claims have proven to be particularly troublesome for courts and litigants alike. As a result, a procedure originally intended "to dispose of the bulk of claims against failed financial institutions *expeditiously* and *fairly*," H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess., at 419, *reprinted in* 1989 U.S.C.C.A.N. 86, 215 (emphasis added), has instead become a source of delay and injustice in the disposition of such claims. This irony is nowhere more apparent than in the present action.

FIRREA confers upon the FDIC the authority to initially determine claims against a failed depository institution for which it is appointed receiver. 12 U.S.C. § 1821(d)(3)(A). If a timely claim, together with proof, is submitted to the FDIC, it must determine within 180 days whether to allow or disallow the claim. *Id.* § 1821(d)(5)(A)(i). If the FDIC disallows the claim or fails to make a determination within that time peri-

od, the claimant may, within 60 days, request administrative review or file (or continue[1]) a suit on the claim in federal district court. *Id.* § 1821(d)(6)(A). Prior to the exhaustion of this process, no court may exercise jurisdiction over the claim. *Id.* § 1821(d)(13)(D). *See Meliezer v. Resolution Trust Co.*, 952 F.2d 879, 882 (5th Cir.1992) ("Although FIRREA does not explicitly mandate exhaustion of administrative remedies before judicial intervention, the language of the statute and indicated congressional intent make clear that such is required.").

■ Notwithstanding this limitation on judicial review, "FIRREA [does] not strip ... courts of subject matter jurisdiction over civil actions *pending* against a failed financial institution at the time the FDIC takes over as the institution's receiver." *Marquis*, 965 F.2d at 1155 (emphasis added). *See Praxis Properties, Inc. v. Colonial Sav. Bank*, 947 F.2d 49, 63 n. 14 (3d Cir.1991) ("The situation is slightly different ... where a claimant files its action against a depository institution *before* the institution ... is placed in receivership."). Accordingly, the FDIC's appointment as Granite's receiver did not divest the Superior Court—or this court, following removal—of subject matter jurisdiction over plaintiffs' action. What it did do, however, was create for plaintiffs an obligation to file an administrative claim with the FDIC. "FIRREA makes participation in the [ACRP] mandatory for all parties asserting claims against failed institutions, regardless of whether lawsuits to enforce those claims were initiated prior to the appointment of a receiver." *Marquis*, 965 F.2d at 1151. *See In re Federal Deposit Ins. Corp.*, 762 F.Supp. 1002, 1005 (D.Mass.1991) ("[I]t is clear that Congress manifested an intent to permit a claimant to continue an action on a claim instituted against an insolvent bank before appointment of the FDIC as receiver for that bank only after the claimant has exhausted the administrative claim review procedure.").

■ Given the primacy of this obligation, the usual course in a pre-receivership action is to stay proceedings pending exhaustion of the ACRP. *See Marquis*, 965 F.2d at 1155. *See also Coston v. Gold Coast Graphics, Inc.*, 782 F.Supp. 1532, 1536 (S.D.Fla.1992) ("Congress intended to stay actions against an insolvent bank filed prior to the FDIC's appointment as receiver until the claimants have complied with the FDIC's administrative review process."); *Guidry v. Resolution Trust Corp.*, 790 F.Supp. 651, 655 (E.D.La.1992) ("FIRREA implicitly authorizes and requires that a prereceivership case be stayed until the administrative process is finished."). But the issuance of a stay presupposes that a claimant still has time in which to initiate the ACRP. In this case, plaintiffs have not yet filed an administrative claim, and the March 16, 1992 deadline for doing so has long since passed. Unless plaintiffs can demonstrate a valid excuse for their delay, the court will have no choice but to dismiss their claims against the FDIC. *See Marquis*, 965 F.2d at 1152; *Althouse v. Resolution Trust Corp.*, 969 F.2d 1544 (3d Cir.1992).

## IV.

■ Plaintiffs contend that their failure to file a claim is excused because the FDIC "never informed [them] that there was any requirement for such a filing of a written claim." Pls.' Opp'n ¶ 3. The court agrees with plaintiffs' premise, but cannot adopt the conclusion they draw from it.

Upon its appointment as receiver for a failed depository institution, the FDIC is required to "publish a notice to the depository institution's creditors to present their claims, together with proof, to the [FDIC] by a date specified in the notice which shall be not less than 90 days after the publication of such notice." 12 U.S.C. § 1821(d)(3)(B)(i). This notice must be republished "approximately 1 month and 2 months, respectively, after the [initial] publication." *Id.* § 1821(d)(3)(B)(ii). In this case, notices of Granite's failure and the appointment of the FDIC as receiver were published in the *Boston Herald* and the *Patriot Ledger* on December 17, 1991. These notices, which instructed Granite's

---

1. "[T]he filing of a claim with the [FDIC] shall not prejudice any right of the claimant to continue any action which was filed before the appoint-ment of the [FDIC as] receiver." *Id.* § 1821(d)(5)(F)(ii).

creditors to present their claims to the Liquidating Agent by 5:00 p.m. on March 16,[2] were republished in the same newspapers on January 16, 1992 and February 15, 1992. The sufficiency of these notices is not disputed.

As receiver, the FDIC was also required to "mail a notice similar to the [published] notice ... to any creditor shown on the institution's books." *Id.* § 1821(d)(3)(C). Pursuant to this requirement, the FDIC mailed written notices "to all creditors listed on [Granite's] records," Mendes Aff. ¶ 5, but not to plaintiffs. The FDIC contends that it "could not have given notice to Plaintiffs herein because they were not listed as *creditors* at the time the notices were sent." Def.'s Mem. at 9 n. 2 (emphasis in original). Regardless of whether plaintiffs were "creditors" within the meaning of FIRREA,[3] the FDIC was nevertheless obligated to mail a notice to any "*claimant* not appearing on [Granite's] books within 30 days after the discovery of such [claimant's] name and address." 12 U.S.C. § 1821(d)(3)(C)(ii) (emphasis added). There can be no question that the FDIC was aware of plaintiffs' claims against Granite. In cases where suit has already been filed against a depository institution before the FDIC is appointed receiver, the FDIC receives notice of those claims "when it steps into the shoes of the failed [institution] and takes control of its assets." *Coit Independence Joint Venture v. Federal Sav. & Loan Ins. Corp.*, 489 U.S. 561, 585, 109 S.Ct. 1361, 1374, 103 L.Ed.2d 602 (1989). In this case, the FDIC stepped into Granite's shoes on December 12, 1991. By January 11, 1992, therefore, the FDIC should have mailed "individual notices to [plaintiffs] informing them of the deadline for presenting claims." *McLaughlin v. Federal Deposit Ins. Corp.*, 796 F.Supp. 47, 49 (D.Mass.1992).

Under the disjointed logic of FIRREA, this notice deficiency does not excuse plaintiffs' failure to file a timely claim. The statute provides in no uncertain terms that "claims filed after the date specified in the [published] notice ... shall be disallowed and such disallowance shall be final." 12 U.S.C. § 1821(d)(5)(C)(i). The sole exception to this finality provision applies only if "the claimant did not receive notice of *the appointment of the receiver* in time to file [a] claim before [the deadline]." *Id.* § 1821(d)(5)(C)(ii)(I) (emphasis added).[4] "[W]here a claimant has been properly notified of *the appointment of a federal insurer as receiver,* and has nonetheless failed to initiate an administrative claim within the filing period, the claimant necessarily forfeits any right to pursue a claim against the failed institution's assets in any court." *Marquis,* 965 F.2d at 1152 (emphasis added) (citations omitted). *See Meliezer,* 952 F.2d at 882–83 (rejecting argument that receiver's failure to meet mailing requirement waives obligation to exhaust administrative remedies).

Plaintiffs concede that they were aware of the FDIC's appointment as receiver for Granite. Indeed, plaintiffs' counsel spoke on numerous occasions with the attorneys representing the FDIC in this action. Mackin Aff. ¶¶ 6, 9.[5] While unfortunate, the fact that he

---

**2.** The notices published in the *Boston Herald* listed the deadline for filing claims as March 16, 1992. *See* Affidavit of Joao R. Mendes ("Mendes Aff.") Ex. A. Strangely, the notices published in the *Patriot Ledger* gave March 16, *1991* as the deadline. *See id.* Ex. B–D. This apparent typographical error is of no consequence in this case, as neither plaintiffs nor their counsel read the notices published in the *Patriot Ledger.* Affidavit of Gerard F. Mackin, Jr. ("Mackin Aff.") ¶ 16.

**3.** FIRREA does not include a definition of the term "creditor," and the court will not endeavor to fill that void here. Suffice to say that, if § 1821(d)(3)(C) were read *so strictly as to* exclude plaintiffs, the limitation on judicial review set forth in § 1821(d)(13)(D) could also be read not to apply to plaintiffs and their claims. *See In re Purcell,* 150 B.R. 111, 114 (D.Vt.1993)

("[S]ince the term 'claims' should be interpreted consistently throughout the statute and 12 U.S.C. § 1821(d)(3) indicates that Congress meant creditors' claims, the reference to 'claims' in 12 U.S.C. § 1821(d)(13)(D) should also be read to refer to creditors' claims.").

**4.** *See, e.g., New Bank of New England v. Ellis,* No. 91–40123–GN, 1993 WL 23634, 1993 U.S. Dist. LEXIS 1110 (D.Mass. Jan. 15, 1993) (allowing motion to stay action where it could not be determined whether plaintiff had actual notice of FDIC's appointment as receiver).

**5.** This court is troubled by the fact that, during the course of these exchanges, counsel for the FDIC never mentioned the requirement that plaintiffs submit their claim for administrative

"did not know that there was any requirement for filing a written claim with [the] FDIC," *id.* ¶ 12, is irrelevant under the language of the statute. Unless and until Congress revisits FIRREA, a claimant who was aware of the FDIC's appointment as receiver, but unaware of the need to file an administrative claim, is without a remedy even if the FDIC failed to comply with 12 U.S.C. § 1821(d)(3)(C).

▮ Invoking notions of estoppel, plaintiffs urge the court to treat their state court complaint, which "sets forth all of the grounds for [their] claim against [the] FDIC," as written notice of the claim. Pls.' Opp'n ¶ 3. Although this course may seem the more equitable one, the court has no power to take it. An otherwise valid jurisdictional prerequisite cannot be abrogated by visceral notions of fairness. *See Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982). "[S]ubject matter jurisdiction either exists or it does not. And if the latter, then it cannot be conferred by estoppel any more than it can be conferred by the consent of the parties." *Adorno Enterprises, Inc. v. Federated Dep't Stores, Inc.*, 629 F.Supp. 1565, 1570 (D.R.I. 1986).

### V.

The court notes that this action may not have been properly removed in the first place. Under FIRREA, the FDIC may remove an action "before the end of the 90–day period beginning on the date the action, suit, or proceeding is filed against the [FDIC] or the [FDIC] is substituted as a party." 12 U.S.C. § 1819(b)(2)(B). In the First Circuit, the FDIC is deemed to be "substituted as a party" at the time of its appointment as receiver. *Woburn Five Cents Sav. Bank v. Robert M. Hicks, Inc.*, 930 F.2d 965, 969 (1st Cir.1991) ("[D]elaying the effect of the change until formal substitution of parties has taken place would be to elevate form over substance.").[6] The FDIC's contention, therefore, that it "did not become a party to this suit until October 30, 1992," Def.'s Reply Mem. at 3, is wrong.[7] As a matter of law, it became a party on December 12, 1991, the date of its appointment as Granite's receiver. Thus, the deadline for removing this action was March 11, 1992.[8]

The issue of timing aside, this action may nevertheless fall within the state action exception to FIRREA's removal provision. That exception provides that the FDIC may not remove any action:

(i) to which the [FDIC], in [its] capacity as receiver of a State insured depository institution by the exclusive appointment by State authorities, is a party other than as a plaintiff;

(ii) which involves only the preclosing rights against the State insured depository

review. Mackin Aff. ¶¶ 8, 11. This silence was particularly questionable if, as plaintiffs' counsel avers, he "was told that [the] FDIC was reviewing the claim and that it took a long time for [the] FDIC to evaluate a claim and prepare a settlement offer." *Id.* ¶ 7. *Cf. Glenborough New Mexico Assoc. v. Resolution Trust Corp.*, 802 F.Supp. 387, 392 (D.N.M.1992) (criticizing RTC's failure during settlement negotiations to inform plaintiffs of need to pursue administrative remedies).

**6.** *Accord Lazuka v. Federal Deposit Ins. Corp.*, 931 F.2d 1530, 1537 (11th Cir.1991) ("[T]he [90–day] limit begins to run upon [the FDIC's] receipt of notice that it has been appointed as receiver."). *But see Federal Deposit Ins. Corp. v. Loyd*, 955 F.2d 316, 327 (5th Cir.1992) ("[T]he removal clock begins to run when the FDIC makes an appearance in the state court...."); *Kirkbride v. Continental Casualty Co.*, 933 F.2d 729, 733 (9th Cir.1991) (rejecting contention that removal period begins to run upon appointment of receiver).

**7.** Even if the FDIC's formal substitution were the relevant event here, the court would question whether it ever occurred. The Superior Court docket contains no entries related to Granite's "emergency" motion to substitute the FDIC as a defendant. Although a copy of that motion was forwarded to this court by counsel for the FDIC, there is no clerk's stamp to indicate that it was filed—much less allowed—in the Superior Court.

**8.** Although the FDIC does not raise the point, the court notes that the SJC's December 16, 1991 stay, which made no mention of the FDIC's removal rights, may have extended this deadline. *But see Woburn Five Cents Sav. Bank*, 930 F.2d at 971–72 (When the FDIC explicitly preserves its right to remove during the stay, "it also preserve[s] its associated obligation to do so in a timely fashion.").

institution, or obligations owing to, depositors, creditors, or stockholders by the State insured depository institution; and (iii) in which only the interpretation of the law of such State is necessary.

*Id.* § 1819(b)(2)(D).[9] Of these requirements, only the third is arguably unmet by this action. Although the claims asserted in plaintiffs' complaint raise only questions of state law, the FDIC could, if this case were to go forward, assert defenses involving the interpretation of federal law. *See Capizzi v. Federal Deposit Ins. Corp.*, 937 F.2d 8 (1st Cir.1991) (holding that exception to FDIC removal statute did not apply where FDIC asserted federal *D'Oench* doctrine as defense); *Perini Corp. v. Federal Deposit Ins. Corp.*, 754 F.Supp. 235 (D.Mass.1991) (same). Because the FDIC has not filed an answer in this action, *see* Def.'s Reply Mem. at 3, a determination of the exception's applicability would involve the "fairly difficult" tasks of predicting the FDIC's defenses and "gaug[ing] their likely significance." *Capizzi*, 937 F.2d at 11.

In the end, the court need not determine the propriety of the FDIC's removal of this action.[10] Plaintiffs' unexcused failure to exhaust FIRREA's administrative claims review process in a timely manner divests this and any other court of jurisdiction over their claims against the FDIC.

### VI.

For all of the foregoing reasons, the FDIC's motion to dismiss must be ALLOWED. There being no other "cognizable basis for the assertion of subject matter jurisdiction in [this] court," *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 47 (1st Cir. 1991), plaintiffs' remaining claims will be remanded to state court. *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 357, 108 S.Ct.

614, 622, 98 L.Ed.2d 720 (1988) ("[A] district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate.").

An order will issue.

---

9. Even where these three requirements are met, the FDIC may still invoke the jurisdiction of a federal district court "if the institution of which the [FDIC] has been appointed receiver could have invoked the jurisdiction of such court." 12 U.S.C. § 1819(b)(2)(E). This exception to the exception does not apply in this case, as there is no independent basis for federal jurisdiction apart from the FDIC's status as a party defendant.

10. Whether or not this case was properly removed, this court is compelled to note its distaste for the "inherent injustice that results from interpreting [FIRREA] to allow removal of a case to a federal district court only to be followed by a motion to dismiss for lack of subject matter jurisdiction by the removing party." *Federal Deposit Ins. Corp. v. Grillo*, 788 F.Supp. 641, 648 (D.N.H. 1992).