Anthony GUGLIELMI, Julius
C. Migliori, Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE COR-
PORATION, as Liquidating Agent/Re-
ceiver for Attleboro Pawtucket Savings
Bank, Defendant and Third–Party
Plaintiff.

NEW BEDFORD INSTITUTION FOR
SAVINGS, Counterclaim Plaintiff,

v.

Joanna F. SPADETTI, and Armando
Spadetti, Third–Party
Defendants.

Civ. A. No. 92–0636 P.

United States District Court,
D. Rhode Island.

Sept. 28, 1994.

Louis V. Jackvony, Jackvony & Jackvony, Lincoln, RI, for Guglielmi and Migliori.

Laurel K. Bristow, Christopher John Almon, Partridge, Snow & Hahn, Providence, RI, for New Bedford Inst. for Sav. and F.D.I.C.

Jason D. Monzack, Cranston, RI, for Joanna F. Spadetti and Armando Spadetti.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

The defendant and third-party plaintiff, Federal Deposit Insurance Corporation ("FDIC") has moved to dismiss the counterclaim filed against the FDIC by the third-party defendants, Joanna F. Spadetti and Armando Spadetti (the "Spadettis"). The FDIC claims that the Spadettis have failed to exhaust their administrative remedies as required by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) and seeks dismissal for lack of jurisdiction over the subject matter pursuant to Federal Rule of Civil Procedure 12(b)(1). For the reasons set forth below, the motion is granted.

### I.

The plaintiffs, Anthony Guglielmi and Julius C. Migliori, filed a petition against Attleboro Pawtucket Savings Bank (the "Bank") in February of 1989 in the Superior Court of the State of Rhode Island. In March of 1989, the Bank filed a third-party complaint against the Spadettis, seeking indemnification from the Spadettis for any judgment entered in favor of the plaintiffs and against the Bank in connection with the plaintiffs' petition. The Bank's third-party complaint is based upon an indemnification agreement (the "Indemnification Agreement") executed by the Spadettis in favor of the Bank.

The Spadettis filed a counterclaim in the state court against the Bank, alleging misrepresentation and fraudulent inducement on the part of the Bank in connection with the Indemnification Agreement and demanding judgment against the Bank for losses allegedly incurred due to a defect in title. Subsequently, the FDIC removed the action to this Court. In their counterclaim the Spadettis demand judgment against the third-party plaintiff in amounts totalling $10,130,000.00 for punitive damages, attorneys' fees, and court costs. This counterclaim is the subject of third-party plaintiff's motion to dismiss.

Prior to August 21, 1992, the Bank was a mutual savings bank organized under the laws of the Commonwealth of Massachusetts and operating a principal place of business in

Rhode Island. On August 21, 1992, the Commissioner of Banks of the Commonwealth of Massachusetts declared the Bank insolvent and appointed the FDIC as its receiver.

The FDIC, acting in its capacity as Liquidating Agent/Receiver of the Bank, complied with the provisions of 12 U.S.C. § 1821(d)(3)(B) by publishing notice to creditors of the Bank in *The Providence Daily Journal* on August 26, September 29, and November 3 of 1992, and in *The Sun Chronicle* on August 26, September 25, and October 25 of 1992. This notice indicated that November 24, 1992 was the deadline for the filing of claims with the receiver. The Spadettis filed no claim with the FDIC by November 24, 1992.

In addition, the FDIC mailed written notice of the need to file an administrative claim to the Spadettis by letter dated May 19, 1993 to Jason D. Monzack, an attorney of record for the Spadettis at that time. *See, Affidavit of Paul D. Doyle,* ¶ 4. The notice stated the necessity of filing a claim with the FDIC within sixty (60) days of the date of the notice. The Spadettis again failed to file a proof of claim with the FDIC within the time allowed.

## II.

■ In the most general terms, FIRREA establishes a claims determination procedure by which the creditors of a failed institution must first present their claims to the FDIC as receiver before pursuing a judicial remedy. 12 U.S.C. § 1821(d). "The primary purpose of the exhaustion scheme is to allow the FDIC to perform its statutory duty of efficiently resolving claims without resort to litigation." *Palumbo v. Roberti,* 834 F.Supp. 46, 52 (D.Mass.1993).

■ Although the First Circuit has declined to locate precisely the source of mandatory exhaustion in FIRREA (*See Marquis v. FDIC,* 965 F.2d 1148 at n. 3 (1st Cir.1992)), it has ruled in conformance with several other circuits that FIRREA makes participation in the administrative claims review process mandatory and that claimants who fail to comply "forfeit[ ] any right to pursue a claim against the failed institution's assets in any

court." *Marquis,* 965 F.2d at 1151–52. *See also Heno v. FDIC,* 20 F.3d 1204, 1207 (1st Cir.1994) ("Failure to participate in the administrative claims review process ... is a 'jurisdictional bar' to judicial review."); *Meliezer v. RTC,* 952 F.2d 879, 882 (5th Cir.1992) ("Although FIRREA does not explicitly mandate exhaustion of administrative remedies before judicial intervention, the language of the statute and indicated congressional intent make clear that such is required."); *Rexam Ltd. Partnership v. Resolution Trust Corp.,* 754 F.Supp. 245, 246 (D.P.R.1990) (discussing legislative history of FIRREA and concluding that to allow claimants to bypass exhaustion requirements would defeat Congress' intent to have the FDIC deal with the hundreds of claims confronting a receiver in the most efficient manner).

■ FIRREA procedures permit a claimant to file suit in court only after filing a claim with the FDIC and then only if the receiver has disallowed the claim or if the 180 day determination period has expired. 12 U.S.C. § 1821(d)(6)(A). At that point, the claimant may file suit in court; section 1821(d)(6)(A) explicitly provides that the appropriate district court "shall have jurisdiction to hear such claim." 12 U.S.C. § 1821(d)(6)(A). FIRREA does not provide a similar grant of federal judicial jurisdiction for claims not timely filed with and determined by the FDIC and, in fact, denies jurisdiction to federal courts except where explicitly provided. 12 U.S.C. § 1821(d)(13)(D).

■ Although in this case the lawsuit and third-party counterclaim predated the receivership, the Spadettis are not excused from FIRREA procedures. Rather, Congress intended "to permit a claimant to continue an action on a claim instituted against an insolvent bank before appointment of the FDIC as receiver for that bank only after the claimant has exhausted the administrative claim review procedure." *In re Federal Deposit Ins. Corp.,* 762 F.Supp. 1002, 1005 (D.Mass. 1991). "[T]he usual course in a pre-receivership action is to stay proceedings pending exhaustion of the [administrative claims review process]." *Espinosa v. DeVasto,* 818 F.Supp. 438, 441 (D.Mass.1993).

The Spadettis did not stay their court proceedings and file an administrative claim, and the deadline for doing so has long since passed. Unless the third-party defendants can provide a valid excuse for their failure to exhaust their administrative remedies, this Court has no choice but to dismiss their counterclaim against the FDIC. *See Espinosa,* 818 F.Supp. at 441.

## III.

There can be no question that this Court lacks subject matter jurisdiction over any claims covered by 12 U.S.C. § 1821(d)(13)(D) if third-party defendants improperly failed to file their counterclaim with the FDIC before the deadline established by the FDIC. *See Celtic Dev. Corp. v. FDIC,* 836 F.Supp. 926, 934 (D.Mass.1993). The Spadettis, therefore argue, as they must, that they were not required to file a claim with the FDIC. Essentially, the Spadettis first offer their assertion of the counterclaim in court as a substitute for filing with the FDIC. Their other major contention concerns the adequacy of notice given them. They assert (1) that the wording of the notice to creditors published by the FDIC was inadequate and (2) that the failure of a creditor to actually and personally receive mailed notice excuses exhaustion. None of these arguments have any basis in the law.

## IV.

■ The third-party defendants contend that exhaustion is not required of them because the FDIC "was on notice at all times as to the nature and basis of the claim being asserted by the Spadettis against it" and because the FDIC has failed to "demonstrate that the FDIC processed the [counter]claim or otherwise acted to approve or disapprove of the matters asserted by the Spadettis in their [counter]claim." Third Party Defendants' Objection to FDIC's Motion to Dismiss at 4. The essence of this argument is that court litigation serves to put the FDIC on actual notice and to obligate the FDIC to take administrative action on the claims underlying the litigation even though no claim is ever filed with the FDIC itself. This argument has no merit.

The litigation, which predated the receivership, may have made the FDIC aware of the nature and substance of the counterclaim which the FDIC now seeks to dismiss, but court litigation does not satisfy the FIRREA requirement to file all claims in a timely fashion with the FDIC. If it were true that the initiation of a lawsuit satisfied FIRREA's filing requirements or compelled the FDIC to initiate the claims determination process, then no litigants involved in a lawsuit predating receivership would ever be required to comply with the administrative procedures established by FIRREA. In fact, however, "FIRREA makes participation in the administrative claims review process mandatory for all parties asserting claims against failed institutions, regardless of whether lawsuits to enforce those claims were initiated prior to the appointment of a receiver." *Marquis,* 965 F.2d at 1151.

*Marquis* and *Espinosa* both involved prereceivership actions in which the claimants failed to stay court proceedings and file their claims with the receiver. The FDIC was on notice as to the nature and basis of the claims asserted against it in those cases just as it was in the case presently at hand. Nevertheless, both *Marquis* and *Espinosa* held that the failure of litigants to file an official claim with the receiver and thereby to initiate administrative proceedings necessarily results in the forfeiture of any right to judicial proceedings. *Marquis,* 965 F.2d at 1152; *Espinosa,* 818 F.Supp. at 441. Notice to the FDIC simply is not relevant. Only timely initiation of administrative procedures by the claimant can preserve a claimant's right to court proceedings. FIRREA nowhere authorizes the FDIC to initiate these proceedings; the FDIC is only empowered to act upon proofs of claim actually "filed with the Corporation as receiver." 12 U.S.C. § 1821(d)(5)(A)(i). Of course, the FDIC cannot act beyond its statutory mandate.

■ Third-party defendants' other major contention is that they did not receive adequate notice and that the failure to receive adequate notice of the need to file a claim with the FDIC excuses them from the exhaustion requirement. This argument is also without any merit.

The Spadettis first contend that the language of the notice published pursuant to 12 U.S.C. § 1821(d)(3)(B) was inadequate. FIRREA requires the FDIC to "promptly publish a notice to the institutions' creditors to present their claims, together with proof, to the receiver by a date specified in the notice which shall be not less than 90 days after the publication of such notice; ..." 12 U.S.C. § 1821(d)(3)(B)(i). Nowhere does FIRREA dictate the contents of the notice beyond the instructions noted above.

Third-party defendants argue, however, that the language used in these publications would not put a reasonable person on notice of the obligation to file further documentation. They protest that the published statement only warns creditors that failure to file their claims with the receiver by the date stated "may" result in their disallowance. The published notice read in part as follows:

NOTICE IS HEREBY GIVEN that the Bank is in receivership. Creditors of such institution are notified to present their claims, together with proof thereof, to the Receiver NO LATER THAN 5:00 P.M. on November 24, 1992 or such claims may be disallowed by the Receiver.

Claims filed after November 24, 1992, may be barred in accordance with 12 U.S.C. 1821(d)(5)(C), as amended.

All claims, with proof must be filed with the Receiver in the following manner.... (emphasis in original).

This notice complies with the specific requirements of 12 U.S.C. § 1821(d)(3)(B)(i). There is sufficient warning contained within the language published to put all creditors on notice of the need to file any claims with the FDIC by the deadline set by the FDIC.

■ Third-party defendants next contend that the mailed notice required by 12 U.S.C. § 1821(d)(3)(C) was not sent to the right persons. In addition to published notice, FIRREA requires the receiver to mail a similar notice of the filing deadline to "any creditor shown on the institution's books." 12 U.S.C. § 1821(d)(3)(C). The FDIC mailed written notice of the need to file an administrative claim to an attorney of record for the Spadettis in the form of a letter dated May 19, 1993 and addressed to Jason D. Monzack.

*See, Affidavit of Paul D. Doyle,* ¶ 4. The third-party defendants object to the motion to dismiss on the grounds that the mailed notice was inadequate in that 1) notice was not sent to the Spadettis or to their new counsel but only to previous counsel (Jason Monzack), and 2) it is not certain that Mr. Monzack received the notice that was sent.

Notice was sent to Mr. Monzack on May 19, 1993. New counsel Paul L. Foster, Esq. entered his appearance on behalf of the Spadettis on March 18, 1992, over a year before notice was mailed. However, Mr. Monzack and Mr. Foster did not jointly file notice of Mr. Monzack's *withdrawal* from the case until September 28, 1993. Therefore, when the FDIC sent notice to Mr. Monzack, it sent notice to an attorney who continued as counsel of record for four months after notice was sent. Such notice is entirely proper. *See Bueford v. RTC,* 991 F.2d 481, 486–87 (8th Cir.1993) (holding that where receiver knows a claimant is represented by counsel with regard to a claim, and especially when litigation is pending, it is entirely proper to notify claimant via her attorney).

■ The third-party defendants call into question whether Mr. Monzack received the notice mailed to him. However, the receipt of notice is irrelevant within the FIRREA scheme. FIRREA only requires the FDIC to mail the notice to any claimant at the claimant's last address appearing in the institution's records; it does not require the FDIC to ensure that claimants actually receive the mailed notice. 12 U.S.C. § 1821(d)(3)(C). "The statute does not burden the FDIC with the task of making an independent investigation into the claimant's current address." *McLaughlin v. FDIC,* 796 F.Supp. 47, 49 (D.Mass.1992).

■ Furthermore, even if notice were not sent, and in this case the proof that notice was sent to Mr. Monzack is entirely adequate, failure of the FDIC to send notice would not relieve third-party defendants of the obligation to exhaust administrative remedies. *See Espinosa,* 818 F.Supp. at 442 ("Under the disjointed logic of FIRREA, this notice deficiency does not excuse plaintiffs' failure to file a timely claim."); *Meliezer v.*

*Resolution Trust Co.,* 952 F.2d 879, 883 (5th Cir.1992). *Contra Palumbo,* 834 F.Supp. at 53 ("*Provided* that FDIC adequately complied with the notice provisions of FIRREA, the fact that plaintiff was unaware of the need to present her claim to the FDIC [before the bar date] is irrelevant.") (emphasis added). Rather, the only claimants who are excepted from the exhaustion requirement are those who do not receive notice of the fact *of the appointment of a receiver.* FIRREA provides that the rule barring late claims:

> shall not apply with respect to any claim filed by any claimant after the date specified in the notice published under paragraph (3)(B)(i) and such claim may be considered if—
>
> (I) the claimant did not receive notice of the appointment of the receiver in time to file such claim before such date; and
>
> (II) such claim is filed in time to permit payment of such claim. 12 U.S.C. § 1821(d)(5)(C).

This exception does not apply to claimants who are aware of the appointment of a receiver but who do not receive notice of the filing deadline. "Therefore, a claimant's assertion that he or she was not made aware of the filing deadline, as distinct from an assertion that the claimant was not aware of the fact of receivership, does not bring the claimant within the exception." *McLaughlin,* 796 F.Supp. at 49. There can be no claim here that the third-party defendants were unaware that the FDIC had been appointed as a receiver. Thus, even if it were true that neither third-party defendants nor any of their counsel had actually received the notice sent them, they would not be excused from filing a timely claim with the FDIC and exhausting administrative remedies before bringing the counterclaim in court.

*Conclusion*

Because third-party defendants were properly notified of the appointment of a federal insurer as receiver and have nonetheless failed to initiate an administrative claim with-

in the filing period, the third-party defendants necessarily forfeit any right to pursue a claim against the failed bank's assets in any court. *See Marquis,* 965 F.2d at 1152. The unavoidable result of this ruling is that this Court retains jurisdiction over the FDIC's third-party claims against the Spadettis but is without subject matter jurisdiction over the Spadettis' claims against the FDIC. Other courts have also recognized the "jurisdictional void" created by FIRREA which may grant a court jurisdiction over a case while not granting the court jurisdiction over counterclaims or affirmative defenses[1] which arise in the same lawsuit. *See FDIC v. diStefano,* 839 F.Supp. 110, 114 (D.R.I.1993). "However, this anomaly does not allow the Court to create jurisdiction where Congress has expressly forbidden the Court to exercise such authority." *Id.,* (quoting *Federal Sav. and Loan Ins. Corp. v. Shelton,* 789 F.Supp. 1367, 1373 (M.D.La.1992)).

The Spadettis failed to exhaust their administrative remedies as required by FIRREA and this Court is without subject matter jurisdiction over their counterclaim against third-party plaintiffs. The FDIC's Motion to Dismiss Third–Party Defendant's Counterclaim is therefore GRANTED.

SO ORDERED.

---

1. This Court does not reach the question of whether it could assert jurisdiction over affirmative defenses that did not make monetary claims against the Bank's assets. Here, third-party defendants' counterclaim does demand payment from the Bank's assets and clearly falls outside this Court's jurisdiction.