**FLAGLER FEDERAL SAVINGS AND LOAN ASSOCIATION OF MIAMI, a United States corporation, Plaintiff,**

v.

**GREENVIEW APARTMENTS, LTD., a Florida Limited Partnership, et al., Defendants.**

No. 92–6603–CIV.

United States District Court, S.D. Florida, Miami Division.

July 5, 1995.

---

**49.** Conroy dep. at 278.

**50.** Falk dep. at 95–96.

R. Hugh Lumpkin, Keith, Mack, Lewis, Cohen & Lumpkin, Miami, FL, for plaintiff.

Jeffrey R. Eisensmith, Ft. Lauderdale, FL, William Benson, Benson, Moyle & Chambers, Ft. Lauderdale, FL, Ronald A. Luzin, Coral Springs, FL, James A. Painter, Boca Raton, FL, Reginald Clyne, Clyne & Associates, P.A., Coral Gables, FL, for defendants.

## ORDER

K. MICHAEL MOORE, District Judge.

**THIS CAUSE** came before the Court upon Plaintiff's supplemental motion to dismiss (DE 41). Having reviewed the record, considered the argument of counsel, and been advised on the premises, the Court **GRANTS** Plaintiff's motion for the reasons set forth below.

### I. Factual background

Greenview Apartments, Ltd. ("Greenview") was a real estate developer. On July 28, 1988, it recorded a notice of commencement for the construction of an apartment complex. A surveyor then surveyed, staked, flagged and verified the boundary monuments of the construction site. Greenview entered into agreements with various contractors to perform work or supply materials, and these contracts were completed between September 23, 1988 and January 13, 1989.

Greenview took out a construction loan with Plaintiff Flagler Federal Savings and Loan Association of Miami ("Flagler") in December 1988. Flagler recorded a mortgage securing the loan on December 14, 1988.

Greenview soon failed to make payments on its loan and defaulted.

Flagler filed suit in state court for mortgage foreclosure, naming Greenview and the contractors as defendants. It asserted that its mortgage was superior to the contractors' interests in the apartment complex. The contractors disagreed. Although they had recorded mechanics liens after December 14, 1988, they asserted that their liens related back to Greenview's July 18, 1988 notice of commencement.

The state trial court entered summary judgment in favor of Flagler on the issue of priority. The contractors (the "Lienholders") appealed, and the court of appeal reversed and remanded for trial. *Lacentra Trucking Inc. v. Flagler Sav. & Loan Assoc. of Miami*, 586 So.2d 474 (Fla.Ct.App.1991).

On March 27, 1992, the Office of Thrift Supervision appointed the Resolution Trust Corporation ("RTC") to be receiver for Flagler. Two months later, on May 27, 1992, the RTC moved for substitution of party and for a temporary stay of this action. The trial court granted both motions on May 28, 1992.

The RTC subsequently removed the case to this Court. The Lienholders filed a fifth amended answer, affirmative defenses and counterclaim. In response, the RTC filed a supplemental motion to dismiss the Lienholders' counterclaim and to strike the Lienholders' affirmative defenses. The Court now considers that motion.

## II. Discussion

The RTC alleges that the Lienholders' counterclaim must be dismissed because it does not allege that the Lienholders presented their lien claims to the RTC for administrative review. Because the parties have submitted evidence outside of the allegations of the complaint on this question, the Court shall treat the RTC's motion as one requesting summary judgment. Fed.R.Civ.P. 12(b).

### A. Summary judgment standards

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To obtain summary judgment, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

In assessing whether the movant has met this burden, the Court views the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Id.* The party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Id.* at 160, 90 S.Ct. at 1610. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the nonmoving party has introduced no evidence whatsoever. *Clemons v. Dougherty County, Ga.*, 684 F.2d 1365, 1368–69 (11th Cir.1982).

### B. Administrative exhaustion under FIRREA

The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183 (codified as amended in scattered sections of 12 U.S.C.), endows the RTC, as Flagler's receiver, with the power to determine "claims" against Flagler. 12 U.S.C. § 1821(d)(3)(A). The RTC must comply with specific notice requirements in the exercise of this power. First, FIRREA requires the RTC to publish the deadline for presenting claims (the "bar date") by newspaper. It commands the RTC to "promptly publish a notice to the depository institution's creditors to present their claims, together with proof, to the receiver by a date specified in the notice which shall not be less than 90 days after the publication of such notice." *Id.* at § 1821(d)(3)(B)(i). It then shall "republish such notice approximately 1 month and 2

months, respectively, after [the initial] publication." *Id.* at § 1821(d)(3)(B)(ii).

Second, notice of the bar date also must be mailed. FIRREA mandates that:

> [t]he receiver shall mail notice similar to the notice published [by newspaper] at the time of such publication to any creditor shown on the institution's books ... or upon discovery of the name and address of a claimant not appearing on the institution's books within 30 days after the discovery of such name and address.

*Id.* at 1821(d)(3)(C).

The RTC may approve or disallow a claim which is timely filed. *Id.* at § 1821(d)(5)(A). It lacks similar discretion for untimely claims, which "shall be disallowed and such disallowance shall be final." *Id.* at § 1821(d)(5)(C)(i). There is one exception to this bar: the RTC may allow an untimely claim if "the claimant did not receive notice of the appointment of the receiver in time to file such claim before" the bar date. *Id.* at § 1821(d)(5)(C)(ii)(I).

FIRREA provides for limited judicial review of the RTC's disapproval of claims. A claimant has 60 days from either the bar date or the date of the disallowance of a claim to seek review in district court. *Id.* at § 1821(d)(6)(A). If a claimant fails to file suit within this period, the claim's "disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim." *Id.* at § 1821(d)(6)(B). Federal courts have no jurisdiction over a FIRREA claim except as set forth above. *Id.* at § 1821(d)(13)(D).

■ Interpreting this statutory scheme, the Eleventh Circuit recently held that "FIRREA makes exhaustion of the ... administrative review process mandatory when the [RTC] has been appointed receiver for a financial institution." *Motorcity of Jacksonville, Ltd. v. Southeast Bank N.A.*, 39 F.3d 292, 296 (11th Cir.1994). This exhaustion requirement applies regardless of whether (as is true in this case) a claimant has brought suit on its claim prior to the RTC's appointment as receiver. *Id.* In such a circumstance, "the claimant must exhaust its administrative remedies before continuing its action in state or federal court." *Id.*[1]

■ The RTC contends that the Lienholders' lien priority claims are barred because the Lienholders failed to timely pursue them in the administrative claims review process. On April 5, 1992, the RTC began publishing notices requiring Flagler's "creditors"[2] to present proofs of claims to the RTC no later than July 6, 1992. The Lienholders did not file proofs of claim as of that date.[3]

■ The Lienholders assert that they are excused for not timely filing proofs of claim with the RTC because the RTC never mailed

1. *Motorcity,* decided after briefing of the RTC's motion, disposes of the Lienholders' claim that they need not have exhausted their administrative remedies because this action was pending prior to Flagler's receivership.

2. Although section 1821(d) refers to "creditors" of a failed financial institution, the claims review procedure set forth therein has been held to apply to any person who seeks a determination of rights vis-a-vis a failed financial institution's assets, even if the person is not strictly a creditor of that institution. *See Freeman v. FDIC,* 56 F.3d 1394, 1400–1401 (D.C.Cir.1995); *Marquis v. FDIC,* 965 F.2d 1148, 1152 (1st Cir.1992). Thus, despite the Lienholders' claim that they are seeking recovery against the assets of *Greenview* rather than Flagler, section 1821(d)'s claims review process is applicable to them because their claims require an adjudication of their rights vis-a-vis the rights of Flagler.

The Lienholders also suggest that FIRREA is inapplicable because Greenview's property is covered by title insurance. The Court can discern no relevance of the existence of such insurance.

3. The fact that the Lienholders sent a settlement demand letter to Flagler prior to its entry into receivership does not avail the Lienholders. This letter, which was not even addressed to the RTC, provides no information about the Lienholders' claims and thus is not, in any meaningful sense, a "proof" of these claims. *See Capital Data Corp. v. Capital Nat. Bank,* 778 F.Supp. 669, 677 (S.D.N.Y.1991). Further, and more fundamentally, *Motorcity* indicates that, where a lawsuit is pending prior to the appointment of the RTC as receiver, a court should stay its proceedings to permit the plaintiff to exhaust FIRREA's administrative claims review process. 39 F.3d at 296. *Motorcity's* dictate in this regard implies that a pending complaint is insufficient to stand as a proof of claim. Given this, the Court concludes that a settlement demand concerning a pending complaint similarly cannot serve as a proof of claim.

notices of the bar date to them. The RTC does not dispute that it failed to mail the requisite notices.

The RTC counters, however, that the Lienholders had notice of its appointment as a receiver and were aware of the stay of the state court proceedings no later than May 28, 1992. Given this, the RTC concludes, the Lienholders received adequate notice of the July 6, 1992 bar date.

■ The Court agrees with the RTC. Although FIRREA directs the RTC to mail notice of the bar date, the statute imposes no consequence if the RTC fails to abide by this requirement. *Intercontinental Travel Marketing, Inc. v. Federal Deposit Insurance Corporation,* 45 F.3d 1278, 1284–85 (9th Cir. 1994). Nor does it provide for a waiver of or exception to the statute's bar of untimely claims. *Freeman v. FDIC,* 56 F.3d 1394, 1402 (D.C.Cir.1995). *Accord Sapp v. FDIC,* 876 F.Supp. 249, 252–53 (D.Kan.1995); *Glenborough New Mexico Assoc. v. RTC,* 802 F.Supp. 387, 392–93, 399–400 (D.N.M.1992).

■ The statute's silence in this regard speaks volumes. FIRREA *does* grant one exception to its bar: a person may file an untimely claim if he or she did not receive notice of the *appointment of the receiver.* 12 U.S.C. § 1821(d)(5)(C)(ii)(I). Because Congress provided for an exception where a party is not notified of the RTC's appointment as receiver, but not where the RTC fails to mail notice of the bar date, the Court concludes that Congress did not intend for an exception to exist in this latter circumstance. *Intercontinental Travel,* 45 F.3d at 1285; *Espinosa v. DeVasto,* 818 F.Supp. 438, 442 (D.Mass.1993).[4]

In light of this construction of FIRREA, the Lienholders argue that the RTC's failure to mail notice of the bar date deprived them of due process. *See Greater Slidell Auto Auction, Inc. v. American Bank & Tr. Co. of Baton Rouge,* 32 F.3d 939, 942 (5th Cir.1994); *Whatley v. RTC,* 32 F.3d 905, 911 (5th Cir.

1994) (Duhe, J., concurring). Not so. While they never received mailed notice of the bar date, the Lienholders received notice of the appointment of the RTC as a receiver and of the state court's stay of this action.

These circumstances placed the Lienholders on sufficient "inquiry" notice of the bar date to satisfy due process. *Greater Slidell,* 38 F.3d 180, 182 (Aldisert, J., dissenting); *Guglielmi v. FDIC,* 863 F.Supp. 54, 59 (D.R.I.1994). In *In re Alton,* 837 F.2d 457 (11th Cir.1988), a creditor ("Byrd") had sued a debtor ("Alton") for monies taken by fraud. Byrd subsequently received notice that Alton had filed for bankruptcy reorganization and that an automatic stay was in effect. However, because Byrd was not listed on the bankruptcy petition, he did not receive notice of a creditors' meeting or the last date to file complaints regarding the dischargeability of Alton's debts. That deadline passed without Byrd challenging the discharge of Alton's debt to him. When Byrd learned of this, he moved for an extension of time to file his complaint. The bankruptcy court denied Byrd's motion.

On subsequent appeal to the Eleventh Circuit, Byrd asserted that the lower court's denial of his motion deprived him of due process of law because he had never received mailed notice of the bar date for filing complaints. *Id.* at 458. The Eleventh Circuit rejected this argument, stating:

> We conclude that there was no due process violation. At a time when he could have protected himself, creditor Byrd received actual written notice of the bankruptcy proceeding, a notice adequate to apprise him of the pendency of the action and afford him an opportunity to present his objections. If Byrd, once warned of the bankruptcy proceeding, had made a minimal effort to determine the date of filing of the petition, he would have realized the outside dates for the filing of his complaint contesting the dischargeability of his claim

4. The Lienholders also claim that the RTC did not satisfy FIRREA's requirements for publishing notice by newspaper because the RTC's second republication of notice of the bar date in a Fort Lauderdale newspaper occurred one month late. This argument does not avail the Lienholders.

First, it is undisputed that the RTC timely republished notice in a prominent Miami newspaper. Second, for the same reasons the RTC's failure to mail notice does not excuse the Lienholders' untimely filing, any error in newspaper publication also cannot provide an excuse.

or for a motion to extend such time. Instead, appellant Byrd made no such effort and cannot now properly complain of the consequences of his inaction.

*Id.* at 460–61. *Accord In re Medaglia,* 52 F.3d 451, 455–57 (2d Cir.1995); *In re Christopher,* 28 F.3d 512, 515–19 (5th Cir.1994).

 Similar to *Alton,* the Lienholders were aware of the receivership and of the RTC's success in obtaining a stay of this action several weeks before the bar date. Given FIRREA's mandate to the RTC to "promptly" publish notice of the bar date, the Lienholders were provided sufficient notice to anticipate the pending July 6, 1992 bar date. "[I]t is well established that due process is not offended by requiring a person with actual, timely knowledge of an event that may affect a right to exercise due diligence and take necessary steps to preserve that right." *Medaglia,* 52 F.3d at 455. This the Lienholders did not do. They thus may not now rely upon their inaction to stake out a due process claim. *Alton,* 837 F.2d at 461.

■ The Lienholders also contend that the RTC consented in September 1993 to the late filing of their proof of claims. This contention is unavailing, however, because the RTC lacks the authority to act in this manner. FIRREA expressly commands that untimely claims *"shall* be disallowed and such disallowance *shall* be final." 12 U.S.C. § 1821(d)(5)(C)(i) (emphasis added). The RTC has no discretion to ignore this dictate by consenting to allow untimely claims.

■ Finally, the Lienholders contend that FIRREA's administrative claims review procedure is inapplicable because FIRREA was enacted four months after Flagler filed this lawsuit in state court. This argument lacks merit. FIRREA did not affect the substantive rights of the parties. Instead, it merely created new procedures for adjudicating existing rights. FIRREA thus properly may be applied to this lawsuit even though it was pending at the time of the statute's enactment. *Landgraf v. USI Film Products,* —— U.S. ——, —— – ——, 114 S.Ct. 1483, 1501–02, 128 L.Ed.2d 229 (1994).

## III. Conclusion

For the reasons set forth above, summary judgment is entered against Defendants' fifth amended counterclaim. Additionally, Defendants' fifth amended affirmative defenses are stricken because, like the counterclaim, they require a determination of the rights of the Lienholders vis-a-vis those of Flagler.

**DONE AND ORDERED.**